### LUZIER'S, Inc., v. NEE, Collector of Internal Revenue.

### No. 11405.

Circuit Court of Appeals, Eighth Circuit.

Aug. 7, 1939.

Rehearing Denied Nov. 2, 1939.

Albert F. Hillix and John B. Gage, both of Kansas City, Mo. (Elmer B. Hodges and Gage, Hillix, Hodges & Cowherd, all of Kansas City, Mo., on the brief), for appellant.

F. E. Youngman, Sp. Asst. to Atty. Gen. (Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for appellee.

Before SANBORN and THOMAS, Circuit Judges, and SULLIVAN, District Judge.

SULLIVAN, District Judge.

This is a suit at law brought against the above named Collector of Internal Revenue, to recover the sum of $147,240.56, paid as additional manufacturer's excise taxes, and interest for the period from June 21, 1932, to February, 1936, inclusive, such taxes being assessed and collected under the provisions of Section 603 of the Revenue Act of 1932, Chapter 209, 47 Stat. 169, 26 U.S.C.A. following section 1481, upon articles (toilet preparations and cosmetics) manufactured and sold by it during that period.

This case was tried to the court below without a jury, the same having been waived. Judgment was rendered in favor of the Collector, and the case comes before this Court on an appeal by the taxpayer from the judgment of the District Court. The parties will be designated herein as they were in the court below.

Beginning with the enactment of the taxing act, the taxpayer made monthly returns to the proper Collector of Internal Revenue and paid the taxes, as shown by its computations and returns. The Commissioner of Internal Revenue thereafter assessed against the taxpayer additional taxes for the period from June 21, 1932, to February, 1936, inclusive, in the total sum of $124,936.74, which sum, together with interest thereon to the amount of $22,303.82, was paid to the Collector. Claims for refund for the total of the above amounts were thereafter filed by the taxpayer. These claims were denied and this suit, in proper time, was instituted.

The plaintiff is, and was, prior to June 21, 1932, engaged in the manufacture and sale of toilet preparations and cosmetics, with its principal place of business at Kansas City, Missouri. It was generally engaged in selling its products at retail, with a small percentage of its sales at a so-called "wholesale price". Its products were widely distributed throughout the United States.

The method which it adopted in the distribution and sale of its products was to grant to, or enter into territorial contracts with individuals. These individuals hired and employed solicitors or salesmen, who sold direct to the consumer in the granted territory. A person receiving a grant of territory was required to devote his entire time to the business of demonstrating, selling and furthering the sale of products manufactured by this plaintiff. He was to canvass such territory in person or by agents, and he fixed and paid the compensation of salesmen working under him. He was required to build up and develop an adequate sales force to cover the territory allotted to him. The plaintiff suggested the retail prices at which its products were to be sold to the purchaser, and nothing appears in the record to indicate that the products were sold at any other or different price. The holders of territory contracts were given wide latitude as to the means by which the sales were to be accomplished. These contracts could be terminated only for a failure of the holder thereof to produce a certain volume of sales. Persons holding territory contracts approved all orders coming from their territory. They were responsible for any merchandise shipped to them or to any purchaser upon orders secured by their agents and approved by them. A great majority of orders for merchandise were secured by solicitors, who interviewed prospective users of cosmetics. These solicitors collected a part, or in some cases all of the purchase price, sent the order to the holder of the territory contract, who, if it met with his approval, sent the same to the office of the plaintiff at Kansas City, where the order was filled, wrapped and mailed or otherwise caused to be delivered to the purchaser as directed by the person taking the order. In the event the whole of said purchase price was not paid, then the merchandise was caused to be delivered c.o.d. as to any unpaid balance thereon, unless directed by the holder of the territory contract to charge the amount of such order to his account with the plaintiff. As consideration for the services of the holders of the territory contracts, they received 60 per cent. of the suggested retail or list retail price of all merchandise shipped on orders secured in their respective territories, or sent to plaintiff by persons residing therein, and received a 60 per cent. discount on all merchandise purchased.

The "wholesale" sales referred to constituted 12½ per cent. of the total sales, and were substantially all made to the district managers, supervisors and agents, and these persons were required to use such merchandise for demonstrating purposes only, and were not to sell such samples, but were to sell other merchandise to the ultimate purchaser, so as a matter of fact, these sales cannot be considered usual sales "at wholesale".

There were some sales of merchandise by the plaintiff company in foreign countries, but these constituted less than 1 per cent. of the gross sales of the company. The taxpayer was essentially engaged in selling its products at retail, and the court below so found.

Prior to June 21, 1932, the taxpayer made a service charge of 15 cents per package. Coincident with the effective date of said Section 603 of the Revenue Act of 1932, and on June 21, 1932, said package charge was discontinued, and a flat charge of 10 per cent on the retail list sale price was made. The taxpayer's invoices thereafter carried the notation, "Service Charge Covers: Increased income tax—increased postal rates—abandoned delivery charge—excise taxes, and emergency expenses". From this 10 per cent. service charge the taxpayer received for the period, July 1, 1932, to December 31, 1935, the sum of $429,593.03. This item, however, does not reflect returns of merchandise or refunds. Giving credit for refunds made on returned merchandise and other proper credits, it appears that the sum of $404,346.73 was received by the plaintiff from this service charge.

The trial court found (1) that during the period involved the plaintiff sold its taxable articles at retail, specially packaged for each individual customer, through orders taken by agents working under contract with plaintiff in particular territories; (2) that said agents were paid on a commission basis, the amount thereof having no relation to the fair market price of the articles sold in the ordinary course of trade; (3) the plaintiff's list price reduced by 40 per cent. was the fair market price of its articles for the purpose of computing the excise taxes in question, and the price for which such articles were sold in the ordinary course of trade by manufacturers or producers thereof; (4) that plaintiff increased the cost of its goods to its customers by adding to and receiving on each order therefor, 10 per cent. of the list price thereof; (5) that the plaintiff has collected the excise taxes involved herein from its customers and has not repaid the amount of such taxes to the ultimate purchasers; and determined that the plaintiff was not entitled to recover from the defendant in any amount.

The plaintiff contends (1) that it bore the economic burdens of the tax; (2) that the trial court erred in giving undue weight to the Commissioner's determination of the basic price for tax purposes, and as a result, failed to make a judicial re-examination of plaintiff's claim; (3) that judgment should have been ordered in favor of the plaintiff and against the defendant Collector, and that in any event, the findings of fact do not support the judgment rendered pursuant to the trial court's order, by at least the sum of $38,701.66.

The defendant, on the other hand, contends that the taxes involved in this suit were, as a matter of fact, paid by the purchasers, and that, in any event, the same were passed on to the purchasers, and consequently the plaintiff did not bear the economic burden of the tax; and further, that the findings of the trial court are sustained by the evidence.

The ultimate questions presented by this appeal are:

First: Has the taxpayer shown by competent evidence that it has not included the tax in the price of the article with respect to which it was imposed, and that it did not collect the amount thereof from the purchaser?

Second: Does the evidence sustain and support the basic selling price for tax purposes, as found by the court below?

The general rule in suits brought against Collectors of Internal Revenue for the recovery of taxes paid and claimed to have been illegally exacted is laid down as one in the nature of an action in assumpsit for money had and received, embodying the principle in equity that the money sought to be recovered in good conscience should be paid over to the plaintiff. United States v. Jefferson Electric Manufacturing Company, 291 U.S. 386, 54 S.Ct. 443, 78 L.Ed. 859; Howbert v. Norris, 10 Cir., 72 F.2d 753; Cary v. Curtis, 44 U.S. 235, 3 How. 236, 246, 11 L.Ed. 576. However, as to suits for the recovery of moneys paid for taxes such as are involved herein, the above general rule of law has been amplified and extended by statute with respect to the showing which the taxpayer is required to make in order to successfully sustain its claim for recovery.

Subdivision (d), Section 621, Revenue Act of 1932, 47 Stat. 169, 26 U.S.C.A. note at end ch. 20, provides: "No overpayment of tax under this title shall be credited or refunded (otherwise than under subsection (a)), in pursuance of a court

decision or otherwise, unless the person who paid the tax establishes, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, (1) that he has not included the tax in the price of the article with respect to which it was imposed, or collected the amount of tax from the vendee, or (2) that he has repaid the amount of the tax to the ultimate purchaser of the article, or unless he files with the Commissioner written consent of such ultimate purchaser to the allowance of the credit or refund."

So here the plaintiff must not only show that it is entitled in equity and good conscience to recover against the Collector, but it must meet the statutory requirement and establish that it has not passed the tax on to the purchaser of its products, and as a corollary thereto, that it has borne the economic burdens of the tax and has not shifted the same to its customers. No contention is made by the taxpayer that it has repaid any amount representing tax to ultimate purchasers of its merchandise, or that it has filed consents of such purchasers to the allowance of the refund.

A further review of the evidence becomes necessary to determine whether this finding of the court below that the tax was "passed on" to plaintiff's customers is supported by the evidence.

The 10 per cent. service charge was computed on the retail selling price, being the retail list price, so in reality the purchaser, instead of paying the retail list price plus a 15-cent per package service charge, as he had done before the enactment of the excise taxing act of 1932, paid the list price plus 10 per cent. of the list price.

John W. Anderson, an officer of the plaintiff company, and one of its accountants, discussed with other officers of the company the service charge of 10 per cent. and the new taxing act, shortly before its effective date. He testified that his interpretation of the word "covers", appearing in the phrase, "Service Charge Covers: Increased income tax—increased postal rates—abandoned delivery charge—excise taxes, and emergency expenses" on the invoices of the plaintiff is "that it covers whatever excise tax was due and whatever increased costs the company was put to on account of legislation." He testified further, "We were compelled to estimate what excise taxes were when that was put out. According to my estimate

that charge covered excise taxes and other expenses"; that the 10 per cent. service charge did not include any of the tax involved in this suit, but was "computed on the basis upon which we [plaintiff] paid the excise tax originally".

The officers of the plaintiff company were at no time certain of the correctness of the basic selling price which it adopted for tax purposes. Attempts were made by its officers to ascertain the base price used by other cosmetic companies, and upon each monthly return made by the taxpayer to the Commissioner appears the notation, "Approval by the Commissioner of Fair Market Price is respectfully requested."

The items of expense from July 1, 1932, to December 31, 1935, which the taxpayer contends are contemplated in the 10 per cent. service charge are:

| | |
|---|---|
| Increased cost of postage | $ 62,578.63 |
| Increased cost of wrapping and packing | 13,490.88 |
| Increased cost of salaries by reason of shorter work day | 47,097.74 |
| Increased cost of merchandise and freight | 45,897.98 |
| Increase in income tax payments | 16,157.23 |
| Making a total, covering the increased cost of the foregoing items, of | $185,222.46 |

The books of the taxpayer do not show the allocation of these amounts from and out of the amounts collected as service charges. While the true situation may be shown irrespective of book entries, when an oral analysis of receipts and the claimed allocation thereof are given upon a trial, the testimony so adduced may not have the convincing effect that book entries contemporaneous with the transaction covering the same subject might carry.

Suffice it to say we must assume that the trial court considered the evidence with reference to the claimed apportionment of the amounts resulting from the service charge to these claimed items of expense.

The plaintiff argues that because its earnings were not increased in proportion to its gross sales for the period covered, as compared with a previous period of the company's history, such fact constitutes proof that the tax was not "passed on".

For the period from June 1, 1929, to and including the first six months of the

year 1932, the plaintiff's operating profit was $224,926.34, with an average percentage of net operating profit to sales of 14.3216, while for the period from July 1, 1932, to December 31, 1935, the total net operating profit was $602,935.28, with an average net operating profit, as compared to sales, of 13.232014. The decline of the percentage of net operating profit, as compared to sales, may be attributed to many causes, such as increased cost of materials, labor, market conditions and fluctuations, and general overhead expense.

The evidence refutes the contention of the plaintiff that the price of the articles was not increased. The purchaser was advised that a 10 per cent. service charge was being imposed to cover the former package charge, the excise taxes and other enumerated items. Mr. Anderson testified that he expected the 10 per cent. service charge to cover all excise taxes. For the period from July 1, 1932, to December 31, 1935, both dates inclusive, $404,346.73 was received by the plaintiff from this service charge. This figure represents the amount remaining in the hands of the company after making proper deductions for credits and return of merchandise. Had the original service charge been in effect for that period, it would have amounted to $131,729.35. The result of the adoption of a 10 per cent. service charge was an increase in the receipts of the plaintiff to the amount of $272,617.38 over and above what its receipts would have been had the 15-cent per package charge been in effect.

It is argued by the plaintiff that this excess was to cover the other enumerated items of expense set out in the service charge. Such items of expense are the usual items going to make up the cost of doing business, commonly called "overhead expense", and are almost without exception reflected in the price of the article to the purchaser. Again referring to the testimony of Mr. Anderson, he says, "I have always included service charge as an increase in the selling price".

It must be borne in mind that the court below was exercising the functions of a jury, and its findings are of the same force and effect as though the same were embodied in a jury's special verdict, 28 U.S.C.A. § 773, and cannot be disturbed when there is substantial evidence tending to support the finding.

The trial court found that the tax involved herein was "passed on" to the purchasers of the taxpayer's products. Were there some basis for concluding the contrary (we are of the opinion there is none), it is not within the province of this Court to re-examine the evidence and reverse this finding, unless the same is clearly wrong. It was the trial court's duty and right to determine the preponderating weight of the evidence. See United States v. Jefferson Electric Manufacturing Company, supra.

This Court, in Brooks v. Willcuts, 8 Cir., 78 F.2d 270, on page 273, expressed itself on the question in the quotation from Dooley v. Pease, 180 U.S. 126, page 131, 21 S.Ct. 329, 45 L.Ed. 457, as follows:

"Where a case is tried by the court, a jury having been waived, its findings upon questions of fact are conclusive in the courts of review, it matters not how convincing the argument that upon the evidence the findings should have been different. Stanley v. Supervisors, 121 U.S. [535] 547, 7 S.Ct. 1234, 30 L.Ed. [1000] 1002.

"Errors alleged in the findings of the court are not subject to revision by the circuit court of appeals, or by this court, if there was any evidence upon which such findings could be made [citing cases]."

We are bound by this finding unless the same is clearly erroneous. Federal Rules of Civil Procedure, No. 52, 28 U.S.C.A. following section 723c; Collier v. Union Central Life Insurance Company, 5 Cir., 100 F.2d 411; Guilford Const. Company, et al., v. Briggs, 4 Cir., 102 F.2d 46.

The burden of proof was on the plaintiff to show that it was entitled to recover. This Court, in Champ Spring Company v. United States, 8 Cir., 47 F.2d 1, 3, certiorari denied, 283 U.S. 852, 51 S.Ct. 560, 75 L.Ed. 1459, said: "It was therefore incumbent upon the plaintiff, to entitle it to recover, to show, not that the defendant had by some illegal method secured these funds, but that the plaintiff had a better right to them than the defendant. * * * Here the burden was on the plaintiff to prove, as against the defendant, its right, in equity and good conscience, to these funds * * *." The evidence shows that the taxpayer increased the price of its articles to an amount more than sufficient to cover the former prices of the articles, plus the amount of the excise tax, and collected in advance the tax from the purchasers. Under such cir-

cumstances it cannot be said plaintiff assumed the economic burden of the tax. The taxpayer, after the passage of the act, was in as good a position to sustain its margin of profit on its products as it was before. To permit the taxpayer to recover in this action, when it appears convincingly that the burden of the tax had been shifted to the consuming public, would result in its unjust enrichment. This is opposed to, and condemned by, the principles of equity. If the plaintiff has not borne the burden of the tax, it is not the real sufferer, and therefore in equity and good conscience is not entitled to recover. See United States v. Jefferson Electric Manufacturing Company, supra; Anniston Manufacturing Company v. Davis, 301 U.S. 337, pages 347, 348, 57 S.Ct. 816, 81 L.Ed. 1143.

The finding of the court below that the plaintiff "passed on" the tax to its customers is supported by substantial evidence, and it will not be disturbed by this Court.

The conclusions we have reached on the first question make unnecessary any consideration of the other contentions of the appellant.

The judgment appealed from is affirmed.