UNITED STATES v. H. T. POINDEXTER & SONS MERCHANDISE CO.

No. 12228.

Circuit Court of Appeals, Eighth Circuit.

June 30, 1942.

---

[4] District of Columbia v. Clawans, 300 U.S. 617, 625, 57 S.Ct. 660, 81 L.Ed. 843.

Frederic G. Rita, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and Maurice M. Milligan, U. S. Atty., and Charles L. King, Asst. U. S. Atty., both of Kansas City, Mo., on the brief), for appellant.

Meredith M. Daubin, of Washington, D. C., for appellee.

Before GARDNER, WOODROUGH, and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

This action was brought to recover refund of $44,976.22 collected from the taxpayer as and for floor-stocks tax, levied, assessed and collected under the provisions of the Agricultural Adjustment Act of May 12, 1933, c. 25, 48 Stat. 31 and particularly Section 16 thereof, 7 U.S.C.A. § 616, upon plaintiff's inventory of August 1, 1933 of articles processed wholly or in chief value from cotton and held for sale on that date. It was alleged in the amended complaint that the plaintiff had paid the tax, that the taxing provisions of the Agricultural Adjustment Act were unconstitutional and invalid (United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914), that a claim for refund was duly filed and rejected by the Commissioner, that the taxpayer had borne the burden of the tax and had not shifted it or obtained reimbursement within the intendment of Section 902 of the Revenue Act of 1936, 49 Stat. 1648, 7 U.S.C.A. § 644. It was also alleged that in connection with plaintiff's offering for sale of the cotton-content merchandise which it owned and had on hand on August 1, 1933, plaintiff had stated and held out to its customers that it absorbed and paid and bore the burden of the tax. Also that the wholesale market value of the inventory of plaintiff's cotton-content merchandise on the day preceding August 1, 1933, namely, July 31, 1933, upon which the floor-stock tax was assessed and paid, was $571,944.41, and that this amount plus freight delivery charges and the normal operating sales mark-up was not realized upon the sale of the merchandise subsequent to August 1, 1933. That plaintiff's salary and overhead expenses for marketing its merchandise from July 1, 1933 to December, 1933, were increased over a like period in 1932 and that the bad debts charged off for the year ending December 31, 1933 largely exceeded the amount charged off at December 31, 1932. That in its bookkeeping plaintiff charged the tax payments made in 1933 to "tax expense" and an adjusting entry was made in 1934 in connection with closing the books for 1933 charging purchases for the year 1933 with the total tax. The balance of the tax remaining unpaid in 1933 was entered as a liability and paid in February, 1934. Neither inventory, book, departmental, group or item cost was increased for the tax or any part of it. Plaintiff's servants in charge of pricing were never instructed to, and they did not after August 1, 1933, increase or include in the prices asked any amount to cover this tax as a separate item, nor was it included in the price asked or received or attempted to be collected from the purchasers. Plaintiff made no change in its sales policy in regard to discounts or freight and cartage delivery policies. That plaintiff's selling prices in June and July, 1933, were subnormal and below the wholesale replacement cost. "The adjustment of these same selling prices in August, 1933, was to reverse the price reductions and to price the cotton-content merchandise in accord with its regular pricing policy on the basis of supply and demand and degree of competition." That plaintiff's advertised pricing slogan was and is "Always Under the Market" and in determining its selling price in 1933 it adhered to this policy and priced its merchandise under the market.

Defendant's answer admitted that the tax had been levied and assessed as alleged and that plaintiff had paid it. Also that claim for refund had been duly made and rejected. It denied that plaintiff had borne the burden of the tax and it put the remaining allegations of the amended complaint in issue by alleging lack of knowledge sufficient to form belief as to the truth thereof. The plaintiff then moved for summary judgment in its favor pursuant to Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, upon the pleadings and supporting affidavits and copies of records presented with the motion, asserting in the motion that there was no genuine issue as

to any material fact and that the truth of the claim that the plaintiff bore the burden of the tax in issue was proven by the affidavits and documents submitted. Thereafter the defendant also moved for summary judgment in its favor on the ground that the pleadings, the claim for refund and certain of the affidavits presented by plaintiff establish that the plaintiff had not borne the burden of the tax sought to be recovered and that plaintiff had no cause of action.

After hearing before the trial court the plaintiff's motion for summary judgment was sustained and the motion of the defendant was denied. Judgment was accordingly entered in favor of the plaintiff for the amount sued for with interest.

The opinion filed by the trial court disclosing the grounds of decision is reported at 40 F.Supp. 787. The defendant appeals.

## Opinion.

Although the fact was not specifically alleged in plaintiff's amended complaint, it was apparent on plaintiff's showing and compatible with its pleading that when the cotton processing tax took effect as of August 1, 1933, this plaintiff immediately increased its inventory valuation and raised its prices on the large stock of cotton-content goods it had on hand. This raising of the prices is referred to in the pleading as "change in selling prices in August, 1933" and "adjustment of selling prices in August" and the Court properly found that "on August 1, 1933, plaintiff increased the price of its cotton-content merchandise." There is no argument or contention that the plaintiff did not raise the prices. But the plaintiff could not allege or show the exact amount or extent to which it obtained increased prices from its customers because, as it informed the Commissioner pending application for refund before him, "the very nature of the merchandise handled, i. e. bankrupt stocks, odd and job lots, seconds and quantity sales, short lengths, surplus mill and factory stock all go to make a comparison ['of prices for prior periods'] difficult and of questionable value", and plaintiff's copies of sales invoices were not available, having been, destroyed after three years. Plaintiff neither alleged nor attempted to show that the amount to which it increased its selling prices was insufficient to cover its former selling prices of the articles plus the amount of the tax assessed and paid in respect to them, or that it did

not realize normal profits after the tax was paid.

Both parties assert, and the trial court clearly recognized that it was the intent of Congress expressed in Section 902 of the Revenue Act of 1936 to prevent those who had paid the floor-stock tax of 1933 from obtaining refund thereof if such refund would unduly enrich them, and it is manifest that such taxpayers would be unduly enriched by refund of the tax if they obtained from their customers in increased prices amounts sufficient to cover former prices plus the amount of the tax they paid. Both parties also assert and the court recognized that the burden of proof was upon the plaintiff to establish that it had itself borne the burden of the tax it paid and that it had not been recompensed therefor.

The trial court found, however, that the plaintiff had reasons for raising the inventory and selling prices of its tax affected goods which were not related to saving itself from the burden of the tax in that its selling prices had been abnormally low in the two months preceding the tax; its cost of doing business had increased, as had bad debts owned by it, and there was a general increase in the market prices. It appeared to the court that as those were the factors prompting the price increase made by plaintiff, the plaintiff never shifted the burden of the tax but bore such burden itself.

■ Study of the affidavits and the accounting and records relied on by plaintiff convinces that there was a general increase in market prices coincident with the processing tax, that plaintiff had previously made some sales of its merchandise at low prices in order to discharge heavy bank obligations, and that plaintiff had charged off a greater sum for bad debts in 1933 than in 1932. But we are not persuaded that taxpayers who show the existence of such reasons or inducements for collecting higher prices for their merchandise after the tax should on that account be favored in respect to refunds over taxpayers in general who have also shifted the tax by exactly the same raising of their prices. The opportunity to raise prices was incidental to the tax and the raising of the price operated to shift the burden thereof. We find no significance helpful to plaintiff in the fact that plaintiff consistently advertised and represented that it absorbed the tax itself. Teller v. Patten, 20 How. 125, 128, 15 L.Ed. 831; Hart-Parr Co. v. Barth Mfg. Co., 8 Cir., 249 F. 629, 631. Nor in the fact that

plaintiff did not add the tax as a separate item in any of its bookkeeping costs or prices asked or collected. Nor in the fact that it charged the amount of the tax to purchases for the year 1933 and carried part of it as a liability into the next year.

The processing tax enactment contemplated that the consuming public would bear the burden of the tax by paying increased prices and its floor-stock provisions supplied an equalizing incident. The limitations of Section 902 with respect to recovery of refunds were prescribed upon the assumption that the consuming public had borne the burden in increased prices. It is not necessary to declare there were no instances in which processors and owners of floor stocks bore the whole burden themselves. But where they immediately increased their prices sufficiently to cover the former prices of the articles plus the amount of the tax, they manifestly shifted the burden to the customers.

We find nothing in plaintiff's complaint or in the testimony supporting its motion for judgment to indicate that the plaintiff was not in as good position to sustain its margin of profit on its merchandise after the passage of the Act as it was before. Its price increase passed the tax burden to the customers and recompensed the plaintiff for the tax payment. The peculiar nature of plaintiff's business provided for such a wide latitude of prices which it might charge that exact comparison between prices it did charge during one period or another would probably not reflect that it maintained any fixed or stable margin of profit on its sales even if plaintiff had been able to supply such comparison—which it was not. Although its witnesses presented compilations of figures from the taxpayer's books showing some comparisons between some selling prices of merchandise on July 31, 1933, and averaged highest and lowest selling prices on turnover of merchandise August 1 to December 31, 1933, at catalogue prices, the showing in no wise tended to establish that the $44,976.22 paid to the government was taken out of capital and never found its way back to the taxpayer through the increased prices.

The concrete definitely controlling consideration therefore is the established fact that the inventory valuations and the prices were raised coincident with the tax, and by the collection of the increased prices the tax was passed on. Though the plaintiff is persuaded that it did not intend to pass the tax on, and that it raised its inventory and prices solely to re-establish normality and to offset its increased expenses and bad debts and because the rise in the market permitted it to do so, its proof was insufficient to establish that it had not been relieved of the tax burden, nor reimbursed therefor, nor that such burden had not been shifted directly or indirectly within the intendment of the statute. Anniston Mfg. Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143; Luzier's, Inc., v. Nee, 8 Cir., 106 F.2d 130; Honorbilt Products Co. v. Commissioner, 3 Cir., 119 F.2d 797; C. M. McClung & Co. v. United States, Ct.Cl., 35 F.Supp. 464.

The taxpayer has stressed the decision of the Seventh Circuit in C. B. Cones & Sons Mfg. Co. v. United States, 123 F.2d 530, as compelling a contrary conclusion, but the facts presented in that case are distinguishable and it is not controlling here.

The fact that both the plaintiff and the defendant in this case moved for summary judgment has been made the basis for contentions concerning the force and effect of the trial court's findings but we deem it unnecessary to discuss them. The trial court considered only the pleadings and the evidence offered by plaintiff and did not undertake to decide upon any conflict of testimony. Our conclusion is that the court erred in its conclusion of law that the increased prices fixed and collected by plaintiff had not relieved plaintiff of the burden of the tax, nor reimbursed it therefor, nor shifted it to others. The judgment in plaintiff's favor must be reversed on that ground. As there is no suggestion in the record that the plaintiff has or can offer any material testimony other than that which it has presented, and as we conclude that its testimony is insufficient to sustain any recovery by it, the defendant's motion to dismiss should have been sustained.

Reversed with direction to dismiss.