## COLONIAL MILLING CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9173.

Circuit Court of Appeals, Sixth Circuit.

Dec. 10, 1942.

Cecil Sims, of Nashville, Tenn. (Cecil Sims and Bass, Berry & Sims, all of Nashville, Tenn., on the brief), for petitioner.

Robert N. Anderson, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty

Gen., and Sewall Key and Robert N. Anderson, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before SIMONS, ALLEN, and McALLISTER, Circuit Judges.

ALLEN, Circuit Judge.

This is a petition to review a decision of the United States Processing Tax Board of Review which denied a refund of any portion of the amount paid by petitioner as processing tax. Petitioner's amended claim, filed with the Commissioner, requested a refund of $108,518.30, and after due notice of disallowance of its claim petitioner filed with the Processing Tax Board a petition for review. The case was heard upon oral evidence and a stipulation of fact.

Petitioner is a Tennessee corporation which prior to and on May 12, 1933, the date of the enactment of the Agricultural Adjustment Act, c. 25, 48 Stat. 31, 7 U.S.C.A. § 601 et seq., and continuously thereafter has been engaged in the milling of wheat into flour and mill feed at Nashville, Tennessee. During the period from July 9, 1933, to March 31, 1935, inclusive, petitioner paid to the Collector of Internal Revenue on account of its first domestic processing of wheat, a processing tax in the total sum of $237,167.34.

Petitioner bought some of its wheat locally, and some of it in Chicago, St. Louis, Louisville and Indianapolis.

The Board found that beginning July 9, 1933, petitioner had on hand certain orders for flour which had not been shipped. On these orders it increased the price by $1.38 per barrel of flour as the amount of processing tax due thereon. With respect to all orders received and sales made after the processing tax went into effect, petitioner added the tax into its price computation and attempted to sell the flour at a price sufficient to get the tax back. Petitioner sold its flour in competition for what it could get at prices that would vary from day to day and would vary with respect to sales to different customers on the same day.

The statutory provisions governing refunds of processing tax are sections 902–916 of the Revenue Act of 1936, 7 U.S.C.A. §§ 644–658. Section 902 provides that no refund of processing tax shall be made or allowed "unless the claimant establishes to the satisfaction of the Commissioner * * * or the Board of Review * * * that he bore the burden of such amount and has not been relieved thereof nor reimbursed therefor nor shifted such burden, directly or indirectly, (1) through inclusion of such amount by the claimant * * * in the price of any article * * * processed from any commodity * * *; (2) through reduction of the price paid for any such commodity; or (3) in any manner whatsoever * * *."

The Board concluded that none of the burden of the amount paid or collected was borne by the petitioner but that such burden was shifted to others, and hence denied the refund.

It was found by the Board, and is conceded here, that the average margin per unit of the commodity processed computed in conformity with section 907 (printed in the margin)[1] was not lower during the tax

---

[1] Sec. 907.

"(a) Where the refund claimed is for an amount paid or collected as processing tax, as defined herein, it shall be prima-facie evidence that the burden of such amount was borne by the claimant to the extent (not to exceed the amount of the tax) that the average margin per unit of the commodity processed was lower during the tax period than the average margin was during the period before and after the tax. If the average margin during the tax period was not lower, it shall be prima-facie evidence that none of the burden of such amount was borne by the claimant but that it was shifted to others.

"(b) The average margin for the tax period and the average margin for the period before and after the tax shall each be determined as follows:

"(1) Tax period. The average margin for the tax period shall be the average of the margins for all months (or portions of months) within the tax period. The margin for each such month shall be computed as follows: From the gross sales value of all articles processed by the claimant from the commodity during such month, deduct the cost of the commodity processed during the month and deduct the processing tax paid with respect thereto. The sum so ascertained shall be divided by the total number of units of the commodity processed during such month, and the resulting figure shall be the margin for the month.

"(2) Period before and after the tax. The average margin for the period before and after the tax shall be the average of the margins for all months (or portions of months) within the period before

period than the average margin during the period before and after the tax. In fact it was 4½ to 5 cents higher. Hence under section 907(a) there is prima-facie evidence that none of the burden of the amount paid or collected as processing tax was borne by the petitioner, but that it was shifted to others.

Petitioner contends that the adverse presumption established by section 907(a) does not exist if the average margin per bushel of wheat, taken to be 43.905 cents per bushel for the tax period is compared with an average margin computed upon the entire period of its operation from September 1, 1925, through March 31, 1937, excluding the tax period. So calculated, it claims that the average margin for the period before and after the tax would be 56.777 cents per bushel of wheat, and if this figure were used as a basis for determining whether or not petitioner had shifted the tax, the petitioner would be entitled to a refund in the amount of $108,518.20. It urges that the statutory period is an unfair time within which to test petitioner's average margin, because it includes part of the national depression period of 1932 and 1933. We think that this fact is immaterial. Congress had power to enact this statute (Anniston Mfg. Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143) and to establish the basis of comparison. No discrimination exists in its application here, and we overrule this objection.

Petitioner next contends that the statutory period is unfair as a basis for comparison of the average margins because of a special situation which existed in its business within the two years prior to the tax period. The statute provides that the period before and after the tax means the twenty-four months immediately preceding the effective date of the processing tax and the six months February to July, 1936, inclusive. The claimant may, however, rebut the adverse presumption by proof of the actual extent to which he did or did not shift to others the burden of the processing tax. Section 907(e). This proof may include evidence that the difference between the average margin for the tax period and the average margin for the period before and after the tax was due to changes in factors other than the tax. Petitioner contends that during 1931 and 1932 it was closing out certain retail stores and taking unusual losses, and that this constituted a factor other than the tax affecting the differential between the margins. We agree with petitioner that such facts, if proved as alleged, would tend to rebut the adverse presumption. But the Board was not satisfied that any such factor affected the adverse margin and no substantial evidence was presented to that effect. No records whatever were kept of the alleged losses, and petitioner's general manager conceded that he could give no figures as to the items thereof. Moreover, it appears that in the fiscal years ending June 30, 1934, and June 30, 1935, which included the entire tax period, the petitioner made its out-of-pocket expenses as well as certain substantial profits, while in the so-called normal years ending June 30, 1926 and 1927 respectively, the petitioner operated at a loss. We conclude, therefore, that there is no merit in the contention that the statutory period is an unfair time within which to establish petitioner's average margin. Cf. United States v. H. T. Poindexter & Sons Merchandise Co., 8 Cir., 128 F.2d 992.

Petitioner next asserts that the statutory presumption is completely rebutted by its evidence of specific sales upon which it claims to have failed to recover the processing tax. It introduced elaborate analyses of sales aggregating 135,400 barrels of flour, the original invoices showing the prices received, and a detailed analysis of the various costs taken from its records. Petitioner sold 189,417 barrels of flour during the tax period, in numerous transactions which usually involved the sale of a relatively small number of barrels. It admitted that in the sale of 54,017 barrels it shifted the burden of the tax by including the tax

and after the tax. The margin for each such month shall be computed as follows: From the gross sales value of all articles processed by the claimant from the commodity during such month, deduct the cost of the commodity processed during the month. The sum so ascertained shall be divided by the number of units of the commodity processed during such month, and the resulting figure shall be the margin for the month.

"(3) Average margin. The average margin for each period shall be ascertained in the same manner as monthly margins under subdivisions (1) and (2), using total gross sales value, total cost of commodity processed, total processing tax paid, and total units of commodity processed, during such period."

in the price received plus a profit of 25 cents per barrel, but claimed that in the sale of the remaining 135,400 barrels it absorbed the tax either in whole or in part. The invoices and the actual figures covering the transactions in the sale of the 54,017 barrels of flour were not introduced in evidence.

In every case with respect to all orders received and sales made after the processing tax went into effect, petitioner's general manager testified that the company endeavored to collect the tax by adding it into the price computation and attempting to sell flour for a sufficient price to get the tax back. He stated that in making up the price for sales in which the petitioner had to pay the tax he would add $1.38 into the cost to cover the tax. Although the petitioner conceded that the tax was considered a part of the cost of operation, it assumed that a profit either of 25 cents or of 10 cents should be figured into the transaction and that it had absorbed the tax in every case to the extent of its failure to realize such profits.

Allowing a profit of 25 cents per barrel, which petitioner claims it must receive in order to realize a fair profit, it asserts that petitioner in the sale of the 135,400 barrels absorbed the tax in whole or in part to the extent of $78,663.99. It states that a larger milling company would usually count upon a profit of ten cents per barrel, and asserts that the tax absorbed by it in case a 10 cent profit were allowed would be $59,022.64. If no profit is permitted and only the recovery of the actual costs allowed it claims that it failed to shift the burden of the tax to its purchasers to the extent of $45,482.64.

■ We regard the figures submitted by petitioner as showing by reasonable approximation the profits or losses from the sales of 135,400 barrels, and so far as they went, as evidence of the actual extent to which the petitioner failed to shift to his vendees the burden of the processing tax in these particular transactions. The words "actual extent", in section 907(e) are used in contradistinction to the extent to which the petitioner is presumed to have shifted to others the burden of the tax according to the prima-facie presumption arising out of the adverse margin to which the proof in rebuttal is addressed. Anniston Mfg. Co. v. Davis, supra. The presumption of the statute is rebuttable and the evidence submitted properly bore upon the question as to whether the petitioner had shifted the

tax. The discrepancies arising out of differences in size of sacks and their corresponding costs, in size of the barrel, whether containing 196 or 192 pounds, the number of bushels of wheat required to make a barrel of flour, and other variations brought out in cross-examination, are not such as to require that the figures of actual cost made up from petitioner's records be disregarded.

■ However, giving the figures presented by petitioner full weight, we think that the decision of the Board must be affirmed because of the failure of petitioner to present invoices of and details as to the sale of the 54,017 barrels of flour as to which it conceded that it shifted the tax entirely. The statute conditions a recovery under it upon proof that the economic burden of the tax has been borne by the claimant. Cudahy Packing Co. v. United States, 7 Cir., 126 F.2d 429; United States v. H. T. Poindexter & Sons Merchandise Co., supra. In conformity with this basic purpose the adverse presumption arising from the margin computation is based upon all the transactions for the statutory periods. While it may be rebutted by any relevant evidence, it cannot be rebutted by presenting details favorable to the petitioner covering only part of the transactions for the periods. As to the individual transactions presented, petitioner's evidence that it has absorbed the tax may be cogent, but if the Board, in view of the gap in the evidence, is not satisfied, as here, that petitioner has borne the burden of the tax, this finding is controlling in this court. Honorbilt Products, Inc. v. Commissioner, 3 Cir., 119 F.2d 797. In the instant case invoices and cost data similar to those presented with reference to the sales of 135,400 barrels of flour with analyses of these transactions might well have indicated that upon an over-all consideration of the tax period the petitioner actually shifted the entire burden of the tax. Petitioner's general manager concedes that for the two fiscal years ending June 30, 1934 and 1935 respectively, the petitioner did obtain a profit for the period as a whole after making allowance for depreciation, taking into consideration all of the transactions. The processing tax years were the first years in which petitioner had realized a net profit since 1928, and an over-all computation from the figures presented shows that considering all sales, the petitioner recovered 100% of its cost, 100% of the

processing taxes paid by it, and a net profit before depreciation of 18 cents per barrel. In other words, there was substantial evidence that losses sustained in the sale of the 135,400 barrels of flour were made up by the profits realized in the sale of the 54,017 barrels of flour, and the entire processing tax for the period, whether considered as a tax or as part of the cost, was included in the prices received for the period.

We agree with respondent's contention that the presumption of section 907(a), which is based upon a consideration of all transactions, cannot be overcome by evidence, even as detailed as that presented here, of certain transactions only. The burden placed upon the petitioner is onerous. I. L. Walker Tobacco Co. v. Commissioner, 6 Cir., 129 F.2d 464. It was held in that case that the burden is not carried conclusively by proof that the taxpayer did not shift the tax in certain ways; nor is it carried in this case by proof that in certain isolated transactions the petitioner did not shift the tax. It must not only be demonstrated that the tax has neither been shifted forward in the sale price nor backward in the cost price, but also that it has not been shifted "in any manner whatsoever." Section 902. The last phrase is sweeping in scope and requires a showing here that the tax has not been shifted considering the transactions of the entire period as a whole.

Petitioner's frank concession that it included the tax in the price which it attempted to obtain on all of these transactions gives rise to a fair inference that the tax was shifted to the purchaser. Andrew Jergens Co. v. Conner, 6 Cir., 125 F.2d 686, 689, 690. Cf. Luzier's, Inc. v. Nee, 8 Cir., 106 F.2d 130, 131, certiorari denied, 309 U.S. 660, 60 S.Ct. 514, 84 L.Ed. 1008; Honorbilt Products, Inc. v. Commissioner, supra. Petitioner does not claim that its increase in the price demanded was due to increased cost of production generally [Cf. E. Regensburg & Sons Co. v. Helvering, 2 Cir., 130 F.2d 507], nor to any specific increase such as increased replacement price of new material. C. B. Cones & Son Mfg. Co. v. United States, 7 Cir., 123 F.2d 530. Apart from its contention that a period different from the statutory period should be used for computation, it does not claim that the factors entering into the cost of operation were not constant. Cf. Epstein v. Helvering, 4 Cir., 120 F.2d 427. Finally, no facts are presented rebutting the inference arising from its raising the price to include the tax that the tax thereby was shifted to the purchaser.

The decision is affirmed.