598

## COTAN CORPORATION v. UNITED STATES.

### No. 2136.

District Court, D. New Jersey.

July 31, 1943.

Budd & Larner and Samuel A. Larner, all of Newark, N.J. (Kenneth Carroad, of New York City, of counsel), for plaintiff.

Charles E. Phillips, U.S. Atty., of Washington, D. C., and Joseph W. Burns, Sp. Asst. to Atty. Gen., for defendant.

FORMAN, District Judge.

In the complaint filed by the plaintiff it is alleged that it paid floor stock taxes on cotton goods imposed by Section 16 of the Agricultural Adjustment Act, 7 U.S.C.A. § 601 et seq., as follows:

| | |
|---|---|
| September 1, 1933 | $2,000.00 |
| August 31, 1934 | 1,134.44 |
| | $3,134.44 |

It is further alleged that the taxes were illegally collected because that law was declared unconstitutional by the United States Supreme Court;[1] that plaintiff filed a claim for refund on or about December 16, 1939, in the amount of $5,000, which was later corrected to $3,134.44 and that the Commissioner of Internal Revenue rejected the claim on January 14, 1941, but subsequently, on March 24, 1941, allowed it to the extent of $549.94. Plaintiff, therefore, sues for the rejected balance of its claim, viz: $2,584.50, together with interest and costs.

An answer was filed by the government and the case was tried to the court without a jury.

Refund of this unconstitutional tax was authorized by Congress under provisions of Section 902 of the Revenue Act of 1936, 49 Stat. 1747, in the following language:

"No refund shall be made or allowed, in pursuance of court decisions or otherwise, of any amount paid by or collected from any claimant as tax under this chapter, unless the claimant establishes to the satisfaction of the Commissioner in accordance with regulations prescribed by him, with the approval of the Secretary, or to the satisfaction of the trial court, or the Board of Review in cases provided for under section 648 of this title, as the case may be—

"(a) That he bore the burden of such amount and has not been relieved thereof nor reimbursed therefor nor shifted such burden, directly or indirectly, (1) through inclusion of such amount by the claimant, or by any person directly or indirectly under his control, or having control over him, or subject to the same common control, in the price of any article with respect to which a tax was imposed under the provisions of this chapter, or in the price of any article processed from any commodity with respect to which a tax was imposed under this chapter, or in any charge or fee for services or processing; (2) through reduction of the price paid for any such commodity; or (3) in any manner whatsoever; and that no understanding or agreement, written or oral, exists whereby he may be relieved of the burden of such amount, be reimbursed therefor, or may shift the burden thereof; or

"(b) That he has repaid unconditionally such amount to his vendee (1) who bore the burden thereof, (2) who has not been relieved thereof nor reimbursed therefor,

---

[1] United States v. Butler, January 6, 1936, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914.

nor shifted such burden, directly or indirectly, and (3) who is not entitled to receive any reimbursement therefor from any other source, or to be relieved of such burden in any manner whatsoever." 7 U.S.C.A. § 644, ch. 26.

The plaintiff sought to satisfy the burden cast upon it by the statute as conditions to the recovery of the taxes by attempting to show that it had absorbed the tax. It endeavored by its first witness to trace goods on hand on April 30, 1936, as being identical with goods included in its tax return as of August 1, 1933, upon which taxes in the sum of $2,326.41 had been paid. It also offered a report of its profits and losses for ten years from 1927 through 1936, showing that plaintiff suffered losses during the years when the AAA cotton tax was in effect, whereas from 1927 to 1932 (six years preceding the tax) plaintiff enjoyed substantial profits. Accountants' reports were submitted covering certain monthly periods prior to the effective date of the tax, August 1, 1933, and for certain months thereafter, which showed a drop in gross profit after the tax was levied. An officer of the plaintiff testified that a study was made by him which disclosed that beginning about 1932 the demand for plaintiff's product, which consisted of material used for covering the interior of automobiles, dropped sharply. This was due to a coincidental change in the style and material in automobile bodies. Plaintiff's production continued to decrease until 1939 when other outlets for its product were located. He stated that selling prices per yard of material fluctuated in amounts much larger than the tax per yard and that price changes upward by the plaintiff did not reflect the tax but rather included other factors of cost.

The other witness for plaintiff testified as an accountant that he had made an examination of duplicate sales invoices of the plaintiff and that he found no increase in selling prices for the period from August 1, 1933, to August 23, 1933, as compared with selling prices in effect for the months of June and July, 1933. The plaintiff's officer and witness, a Mr. Fersko, stated that in his opinion, of 400,000 yards of material sold in the month of August, 1933, 300,000 yards were sold prior to August 23, 1933, and that none of this material would have borne any price increase. At the rate of taxation of two cents per yard, $6,000 in taxes would have been paid upon such material and this would have been in excess of the amount for which plaintiff sues to have refunded to it. Plaintiff's accountant witness also testified as an expert with respect to cost data, claiming to be qualified to give such testimony by reason of his study of many AAA tax cases. He gave it as his opinion that after August 23, 1933, there were estimated increases in labor costs, raw cotton costs and cotton tax costs which greatly offset increases in selling price. Other calculations were offered to support the opinion that the plaintiff did not recover its costs, much less the tax, because it lost money on its overall operation after the period of the imposition of the tax.

Plaintiff contended that this testimony taken as a whole became a "mosaic of economic data indicative of the fact that the tax was absorbed" by the plaintiff.

No one connected with the plaintiff at the time of the payment of the tax appeared to testify. In fact, plaintiff's parent corporation, the Standard Textile Products Company, went into reorganization proceedings in the bankruptcy court in the spring of 1934 and this was apparently responsible for the lack of original record proof and testimony of officers or employees of the company who were in charge during the critical period. Plaintiff admitted that due to its complicated financial position it had paid only $3,134.44 in cash on account of a total tax liability estimated to be a much larger sum.

The government conceded that plaintiff paid the sums of $2,000 and $1,134.44 as tax but asserted that these amounts were actually paid on May 5 and August 25, 1934, respectively. The Commissioner of Internal Revenue advised plaintiff on January 14, 1941, that the sum of $717.92 had already been allowed to it upon previous claims for refund in connection with drawbacks on imports. He further advised plaintiff that the total amount paid by plaintiff was not $5,000 as originally claimed but only $3,134.44, which left a balance of $2,416.52 which the Commissioner rejected. Subsequently, he reopened the claim for refund and allowed a further refund of $549.94, leaving a balance of $1,866.58 which he rejected.

Practically all of the testimony except the formal documents was admitted only over vigorous objection of counsel for the government.

On behalf of the government it was shown that in its claim to the Commissioner of Internal Revenue plaintiff represented that its inventory as of August 1, 1933, was taxable in the sum of $10,222.52. When it was before the Commissioner plaintiff was unable to show that there were in fact any goods in its January 6, 1936, inventory upon which floor stock tax had been paid. However, the Commissioner granted a partial refund in the sum of $549.94 representing the proportion that the amount of tax actually paid bore to the total amount of goods subject to tax without more competent proof. Plaintiff simply could not show by direct proof that it had on hand on January 6, 1936, any of the goods upon which the floor stock tax had been paid. At the trial it sought to show that it had some of the goods on hand by what might be termed "opinion" evidence and also took the position that if it had sold the goods it had not shifted the tax.

Plaintiff's witness, Mr. Fersko, was first employed by the company on August 30, 1937. His testimony, of course, was not based on any first-hand knowledge of the plaintiff's activities during the period under consideration but rather as a result of his study after he arrived upon the job. Through him and over the objection of the government as to its admissibility, a list of goods was offered as being on hand on April 30, 1936, and he gave it as his opinion that this covered the identical merchandise on hand on August 2, 1933. He deduced this conclusion by reason of his examination of records of the plaintiff and the characterization of some of the material as "old" goods and from other similar factors. There was no direct identification of these goods with those inventoried on August 1, 1933, and while the conclusion of the witness may have been a good "guess" it had no greater basis in fact.

Plaintiff's second witness, an accountant, not a regular employe of the plaintiff except in connection with the prosecution of its tax claims, likewise did not support his testimony with the actual record proof. He talked of invoices that he had examined and comparisons he had made which led him to ultimate conclusions that the tax had been absorbed by the plaintiff. He told that his general experience in accounting for firms such as plaintiff had taught him that there were certain increases in costs of labor and material at about the time of the advent of the tax.

It was his opinion that plaintiff was inevitably exposed to such higher costs.

Even if we accept his conclusions in this respect and the further premise that the plaintiff lost money after August, 1933, in contrast to its previous profitable career, these conditions might well have existed and at the same time the tax itself may have been passed on to plaintiff's customers as a factor included in the sales prices, on the whole too small to cover all costs.

The cases cited by plaintiff are easily differentiated from the instant case in that in each there is some element of direct testimony as to the absorption of the tax by the plaintiff that does not exist here. There was an entire absence in this case of fundamental records of costs, inventories susceptible of identification of goods, and selling records. Instead, an attempt was made to spin a web of hypotheses and conjectures, which was too weak to sustain the burden of proof placed upon the plaintiff by law. Unfortunately for plaintiff, it was left without records with which to furnish this required proof under the statute. Its counsel and accountant had ingeniously substituted for them hypothetical conclusions that failed of foundation in established facts. Of a situation somewhat though not completely analogous, the Fifth Circuit Court of Appeals in the case of Finck Cigar Company, Inc., v. Commissioner of Internal Revenue, 134 F.2d 261, said:

"The burden of proof placed upon a claimant by the refund statute is an onerous one. The evidence of this petitioner fails to carry that burden. The principal witness, the president of petitioner, was unable to point to original records which would speak the facts as to payment of the taxes in question. He indulged in assumptions and arbitrary valuations, and when answering questions bearing upon the true facts as to who had paid and borne the burden of the taxes, he used the word 'probably', and left the answer a matter of speculation. Moreover, the petitioner's evidence as to costs measures to no more than estimates and approximations, wholly unsupported by facts, records, or book entries. Nowhere does the record contain substantial evidence upon which a recovery could be predicated. The proof adduced by the petitioner fails to meet the strict requirements of the statute, and the Board of Review properly denied recovery on the claim. Honorbilt Products, Inc., v. Com-

missioner, 3 Cir., 119 F.2d 797; Colonial Milling Co. v. Commissioner, 6 Cir., 132 F.2d 505; United States v. H. T. Poindexter & Sons Merchandise Co., 8 Cir., 128 F.2d 992; Andrew Jergens Co. v. Conner, 6 Cir., 125 F.2d 686; Luzier's Inc., v. Nee, 8 Cir., 106 F.2d 130, 131." 134 F.2d at Page 262, 263.

I am constrained to the opinion that plaintiff has failed to sustain the burden cast upon it to show that it absorbed the tax in question and therefore judgment should be entered in favor of the defendant.

The defendant also objected that plaintiff sought to introduce in this suit evidence of grounds for recovery not set forth in its claim for refund filed with the Commissioner of Internal Revenue as required by Section 903 of the Internal Revenue Act of 1936, 7 U.S.C.A. § 645, and Article 202 of Treasury Regulations 96, promulgated under the Internal Revenue Act of 1936. It cited the decision of the Second Circuit Court of Appeals in the case of Samara v. United States, 129 F.2d 594, as authority for the proposition that this court was precluded from hearing evidence of grounds not made known to the Commissioner.

The record of the evidence before the Commissioner was not before me in such detail to permit a comparison. Since the case has been decided upon its merits, this objection of the defendant requires no further exploration.