## HUTZLER BROS. CO. v. UNITED STATES.
### No. 280.

District Court, D. Maryland.

July 2, 1940.

Cook & Markell, and Charles Markell and Charles Markell, Jr., all of Baltimore, Md., for plaintiff.

Carl Ross McKenrick, Asst. U. S. Atty., of Baltimore, Md., and E. H. Horton and Ruppert Bingham, Sp. Assts. to the Atty. Gen., for the United States.

WILLIAM C. COLEMAN, District Judge.

The sole question in this case is whether the conditions for allowance of refunds

prescribed in Section 902 of the Revenue Act of 1936, 7 U.S.C.A. § 644, relating to floor stocks taxes, assessed under the Agricultural Adjustment Act, have been met by the plaintiff. This act was passed following the decision of the Supreme Court in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914, declaring unconstitutional the Agricultural Adjustment Act of May 12th, 1933, 48 Stat. 31, 7 U.S.C.A. § 601 et seq. The plaintiff, a Maryland corporation, conducts a very large and long-established retail department store,—in fact one of the leading stores of this kind in the city of Baltimore. The amount of floor stocks taxes paid, refund of which is here sued for, is $3,746.95 and interest, plaintiff's claim for same having been duly presented to and denied by the Commissioner of Internal Revenue, following which the present action was instituted. These taxes were levied and collected under the Agricultural Adjustment Act, upon the sale of articles processed wholly or chiefly from cotton. There is no dispute as to the main facts in the case. They have been stipulated.

I find by the very definite weight of the credible evidence that the statutory requirements for refund have been sufficiently met. Section 902 reads as follows:

"No refund shall be made or allowed, in pursuance of court decisions or otherwise, of any amount paid by or collected from any claimant as tax under the Agricultural Adjustment Act [this chapter], unless the claimant establishes to the satisfaction of the Commissioner in accordance with regulations prescribed by him, with the approval of the Secretary, or to the satisfaction of the trial court, or the Board of Review in cases provided for under Section 906 [section 648 of this title], as the case may be—

"(a) That he bore the burden of such amount and has not been relieved thereof nor reimbursed therefor nor shifted such burden, directly or indirectly, (1) through inclusion of such amount by the claimant, or by any person directly or indirectly under his control, or having control over him, or subject to the same common control, in the price of any article with respect to which a tax was imposed under the provisions of such Act [chapter], or in the price of any article processed from any commodity with respect to which a tax was imposed under such Act [this chapter], or in any charge or fee for services or processing; (2) through reduction of the price paid for any such commodity; or (3) in any manner whatsoever; and that no understanding or agreement, written or oral, exists whereby he may be relieved of the burden of such amount, be reimbursed therefor, or may shift the burden thereof; or

"(b) That he has repaid unconditionally such amount to his vendee (1) who bore the burden thereof, (2) who has not been relieved thereof nor reimbursed therefor, nor shifted such burden, directly or indirectly, and (3) who is not entitled to receive any reimbursement therefor from any other source, or to be relieved of such burden in any manner whatsoever."

■ Before considering the case on its merits, it is necessary to rule upon a motion submitted by the Government to dismiss the action on the ground that, by the allegations of the complaint, this court is without jurisdiction to entertain the action. The basis of the motion is the following provision contained in Section 903 of the same Act, 7 U.S.C.A. § 645, relating to filing of claims: "No refund shall be made or allowed of any amount paid by or collected from any person as tax under the Agricultural Adjustment Act [this chapter] unless, after the enactment of this Act [June 22, 1936], and prior to July 1, 1937, a claim for refund has been filed by such person in accordance with regulations prescribed by the Commissioner with the approval of the Secretary. All evidence relied upon in support of such claim shall be clearly set forth under oath. * * *" It is contended that by this provision the plaintiff was required to set forth under oath all of the evidence upon which it relied as a condition precedent to the allowance of any claim for refund, and that no suit may be maintained in this court by plaintiff unless it alleges,—as it did not do,—as an essential part of its right of action, that it had presented to the Commissioner all the available evidence bearing upon its right to refund. The Government also contends that, in any event, the plaintiff is here limited in its production of evidence to the same evidence that was previously submitted to the Commissioner.

We find this position of the Government to be without merit. Where a claim has been rejected by the Commissioner and such fact is alleged in the complaint, no further allegation is necessary for the

maintenance of a suit for refund; and in such suit a plaintiff is not limited to the same evidence produced before the Commissioner. The intent of the statute, reasonably interpreted from the language employed and above quoted, is to bar consideration of claims merely on informal statements or memoranda, and to surround the presentation of claims with full verification, but it is not intended that a claimant who produces before the Commissioner certain evidence is forever thereafter barred from introducing further evidence in resorting to a court proceeding for refund, —a right which is expressly given by Section 905 of the Act, 7 U.S.C.A. § 647. This construction is supported by Anniston Manufacturing Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143 where the Supreme Court, in defining the procedure, rights and liabilities under this same act, said, 301 U.S. at page 343, 57 S.Ct. at page 819, 81 L.Ed. 1143: "With respect to floor stock taxes, no serious question is presented as to the adequacy of the remedy. The remedy by suit is expressly preserved. If the Commissioner refuses refund, suit may be brought against the United States in the Court of Claims or in the District Court for the recovery of the amount claimed to have been illegally exacted. Section 905 [of the Act] (7 U.S.C.A. § 647)." That seems clearly to support the view here taken that the right to invoke the jurisdiction of this court is no different, under the statute here involved, if the taxpayer feels that he has been aggrieved, from the right which he would have in the ordinary income tax refund case. Of course, the express conditions imposed by Section 902 of the Act present different questions from those presented in the ordinary income tax case, but in so far as the right to invoke the jurisdiction of this court and the right to have the question of refund determined are concerned, the taxpayer, in the one case any more than in the other, cannot be hedged around by administrative rulings or views of the Commissioner, which conceivably might keep the taxpayer forever out of court.

We come then to the basic question in the case: Have the conditions of the statute been met? In the Anniston Manufacturing Company case, supra, the Supreme Court said, 301 U.S. at page 352, 57 S.Ct. at page 823, 81 L.Ed. 1143: "When the Congress requires the claimant, who has paid the invalid tax, to show that he has not been reimbursed or has not shifted its burden, the provision should not be construed as demanding the performance of a task, if ultimately found to be inherently impossible, as a condition of relief to which the claimant would otherwise be entitled."

This court finds that, when properly construed, the contention of Government counsel in the present case does violence to this rule announced by the Supreme Court. In other words, the Government's main contention here is two-fold: that the taxpayer is not entitled to recover because, first, it is uncontradicted that, following the imposition of the tax, certain price increases on its merchandise were made by the taxpayer; and because, secondly, the taxpayer is unable to produce its individual records which would show the individual price increases on each individual item. From these facts counsel for the Government would have this court conclude that the burden imposed upon the taxpayer has not been met.

If the taxpayer in the present case had simply denied, categorically, in the language of the act, that he had passed the burden on, or that he had been relieved of it, or that he had been reimbursed for it, the situation would, of course, be clearly different; but where, as the court finds in the present case, there has been an honest effort to explain the position of the taxpayer, and where the oral statements under oath, as well as the written accounting testimony of the taxpayer, contradict any real relationship between the tax and the price increases, that is, indicate that the floor stocks tax was never, in any sense, a factor in determining the sales prices of the various articles, the burden of the statute has been adequately met.

In other words, I think that the weight of the credible evidence in this case clearly supports the sworn statement of Mr. Joel G. D. Hutzler, vice president and treasurer of the plaintiff company, made on February 16, 1938, addressed to the Commissioner of Internal Revenue, which is as follows:

"1. Our business is the operation of a department store. We sell thousands of different articles; some contain cotton, some do not. Our inventory, record and return (PT Form 42) included some 170 items. Many of these 170 items each include a multitude of different articles. The various selling prices for which we sell our

thousands of different articles are from time to time changed whenever occasion arises, some at one time, some at another, never all at one time. Price changes are due to any of the market conditions that bring about changes in competitive prices for competitive articles. In no instance were any changes made by us in the selling prices charged by us for any of our goods on account of the floor stocks tax, either by increasing prices at or about the time of the imposition of the tax in August, 1933, or by reducing prices at or about the time of the decision of the Supreme Court invalidating the tax on January 6th, 1936 In other words, we have never shifted, directly or indirectly, to our customers either the burden of the tax or the relief from the tax by invalidation of it. Accordingly we have made no claim for refund in respect of floor stocks as of January 6, 1936, under Section 602 of the Revenue Act of 1936. The amount of floor stocks tax in respect of goods on hand on January 6, 1936, was approximately $4,000.

"When prices are changed we make various written records or memoranda of such changes. By reason of the lapse of time, however, such records as to the months of August and September, 1933, have been destroyed. If such records had not been destroyed, they would have proved nothing except the negative fact that price changes at or about August 1, 1933, like price changes at or about January 6, 1936, had no relation whatever to the floor stocks tax.

"In no instance did the floor stocks tax increase the total cost or value of the cotton in the finished goods (whether piece-goods or other articles) sold by us by more than a very small percentage of the total cost or value of the finished goods. In the absence of actual records of our multitudinous prices this fact may be illustrated by rough approximation by one or two examples. Among the larger of the 170-odd items in our inventory, record and return (PT Form 42) are woven cloth fabrics, bedspreads and blankets. The item 'woven cloth fabrics' covers a multitude of articles, usually ranging in retail from 12½ cents to $3.00 a yard, most of them from 39 cents to 49 cents a yard. The cotton content of woven cloth will weigh approximately 1 pound to every 4½ yards of cloth. That is to say, the tax will amount to approximately 1 cent for every yard of cloth. Thus the tax represents from ⅓ of 1% to 8% of the selling price of the woven cloth. Our inventory of woven cloth was taken under the direct supervision of the present merchandise staff and our buyer and our Divisional Merchandise Manager affirm as a fact that no part of the tax was added to the selling price of the goods. The cotton content of bedspreads varies somewhat widely. Most of the cotton bedspreads which we have examined weigh on an average about 4½ pounds per spread, some as much as 6½ pounds, others as little as 2¼ pounds. Our present buyer supervised the taking of the bedspread inventory and affirms that in fact no part of the tax was added to the selling price of these bedspreads. The selling price of bedspreads ranges from $3.00 to $15.00, i. e., an average tax of about 20 cents represents from 1⅓% to 7% of the selling price of the bedspreads. The same buyer above referred to remembers the type of cotton blankets included in the inventory. The cotton content of these blankets is about two pounds each. The blankets sell for about $1.25 to $2.00, i. e., the tax represents about 4½% of the selling price of the blankets.

"Except as illustrated by the above data, it is impossible to show by independent facts and figures the uncontradicted affirmatively stated negative fact that the burden of the tax was not shifted.

"2. Except as illustrated by the above data, it is impossible to show the negative fact that the floor stocks tax was not at all a factor in determining the sales price of our various cotton articles.

"3. Except (if at all) in the ordinary course of price changes and without any reference to the floor stocks tax, the selling prices of the inventoried articles on which we paid floor stocks tax were not increased after we replenished our stock with similar articles in the place of which a processing tax had been included."

I embody the aforegoing, verbatim, in this opinion because it has all the indicia of a perfectly honest, frank statement, and I must accept it as disclosing all details possible of disclosure that are pertinent to the issue, because it is not contradicted successfully in this case.

█ Every case of this kind must stand upon its own facts. The Government takes the position that intent plays no part in the matter of relief under the statute; that, if the mere fact can be shown that

prices have been raised any time subsequent to the imposition of the tax, then there is a presumption that the price increase was adopted to offset,—no matter how much or how little,—the tax, because the tax was one of the items of increased costs, and increased prices normally reflect increased costs, and that therefore the presumption becomes conclusive unless met by figures in the case of every individual sale which completely exclude the possibility of any such presumption.

But, of course, the obvious fallacy of such an argument is that it completely ignores the numerous other factors, which, as has been disclosed in this case, were the bases for the increased prices, and which, in and of themselves, more than account for the entire increase,—i. e., the inexorable law of supply and demand, degree of competition, etc.

One might give, ad infinitum, examples of the reductio absurdum of the theory which the Government is here asserting. I know of no decision which goes to the length which the Government now asks this court to go. To put such interpretation upon the requirements as to the burden of proof prescribed by Section 902 would be, in effect, to say that the taxpayer faces a duty that is impossible of performance, namely, he must produce figures which do not exist,—in this case they do not exist, through no wilfulness or neglect on the part of the taxpayer, but because of the very nature of the business, —or to say that, in any event, if the taxpayer has ever raised prices on any of the materials affected by the tax in question, subsequent to its imposition, and if the increase is enough to include any part of the tax whose refund is sought, then the Government cannot be required to make the refund. The obvious result would be to defeat, by an arbitrary ruling of the administrative branch of the Government, the very mandate of the Supreme Court in United States v. Butler, supra, to the effect that the tax was invalid.

The act of Congress here under review was, we must of course assume, passed with the express intent of carrying out what the Supreme Court had decreed must be done. Congress was entirely within its rights in imposing strict conditions, but those conditions could not be so arbitrary as to render nugatory what the Su-

preme Court had decreed; nor can reasonable conditions, actually imposed, be given an arbitrary or unreasonable effect.

Judgment will be entered for the plaintiff, in accordance with this opinion.