## C. B. CONES & SON MFG. CO. v. UNITED STATES.

### No. 7680.

Circuit Court of Appeals, Seventh Circuit.

Nov. 18, 1941.

James W. Noel and Robert D. Armstrong, both of Indianapolis, Ind., for appellant.

Samuel O. Clark, Jr., Asst. Atty. Gen., Frederick G. Rita, Sp. Asst. Atty. Gen., J. P. Wenchel, Bureau of Internal Revenue, of Washington, D. C., and B. Howard Caughran, U. S. Atty., of Indianapolis, Ind., for appellee.

Before MAJOR and KERNER, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

Plaintiff appeals from an adverse judgment, entered February 10, 1941, in an action brought pursuant to the Revenue Act of 1936, U.S.C.A., Title 7, Sec. 644 et seq., to recover a tax assessed and collected by virtue of Section 16(a) (1) of the Agricul-

tural Adjustment Act, U.S.C.A., Title 7, Sec. 616(a)(1), commonly referred to as the Floor Stock Tax. The tax was paid prior to the decision in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914, declaring unconstitutional that portion of the act which authorized the levy. No jurisdictional question is raised—in fact, the sole issue here, as in the court below, is whether the burden of the tax was borne by plaintiff.

The District Court made its findings of fact with which the plaintiff finds little, if any, fault. The controversy revolves largely around the proper conclusion to be drawn from such facts. We are convinced that the question for decision is legal rather than factual. We shall shortly refer to the facts as found by the court. Before doing so, it seems pertinent to relate other facts as disclosed by the record so that those found by the court may be better understood.

Plaintiff was and had been for a long number of years engaged in the business of manufacturing overalls, workmens' clothes and like commodities, made largely from cotton products. On August 1, 1933, the effective date of the tax, plaintiff made an inventory of stock on hand, upon which the floor tax was assessed. The inventory disclosed 318,457 pounds of cotton upon which a tax was assessed and paid in the amount of $14,070.70. Prior to the hearing, certain adjustments were made. Plaintiff admitted that of the tax paid, it had billed certain vendees for the sum of $171.97 as a separate charge, which it collected, and that in certain other invoices it had included the sum of $333.93 in the invoice price of goods, which it had also collected. Plaintiff received a refund in the amount of $1,835.87 on account of goods manufactured for the Red Cross. Because of these adjustments there is now in dispute the sum of $11,728.93.

Plaintiff's general manager testified unequivocally that no part of this tax was passed on to its vendees—in other words, the burden of the tax was borne by the plaintiff. Certain exhibits were introduced by which plaintiff sought to corroborate the testimony of this witness. It is not disputed but that plaintiff kept or had no records by which it could directly trace the cotton product into manufactured goods represented by plaintiff's selling price; that from an accounting standpoint it was impossible to trace the material from its raw form in-

to the finished product, and that a system by which such proof could have been made would have been prohibitive in cost. There is no question raised but that defendant's agents, after plaintiff filed its claim for refund, had access to plaintiff's records, correspondence and files, or that plaintiff failed to cooperate with such agents in every possible way.

The taxed inventory was purchased by plaintiff prior to August 1, 1933, some of it several months prior thereto. During the period prior to August 1, 1933, there was a rapid increase in the market price of such products. Defendant's argument is based largely, if not entirely, on the theory that plaintiff's increased selling price was such as to preclude the contention that the burden of the tax was borne by the plaintiff. Defendant, in support of such argument, compares the selling price of the manufactured products with the price paid for the raw material prior to August 1, 1933. If the case is to be decided on this basis, we think the defendant must prevail —in fact, we do not understand plaintiff to argue to the contrary. Plaintiff contends, however, that its selling price must be considered in relation to the actual or market value—in other words, the replacement value of the raw material which it had on hand at the time the tax became effective. More simply stated, shall plaintiff's original cost price of its raw material, or the replacement cost as of the date the tax became effective, be used as a base?

The issue is emphasized by the court's findings of fact. It found that plaintiff's inventory had been purchased prior to August 1, 1933, at a cost of 8¢ per yard; that on August 1, the market price had increased to 17¢ per yard; that the increase in the market price was due in part to the incidence of the processing and floor stock tax, and that the market price of 17¢ included said tax and anticipated labor costs; that the amount of the floor tax paid by the plaintiff was 2¼¢ per yard; that on August 1, 1933, plaintiff increased its price to include the increased cost of labor and the increased replacement cost of material as of August 1; that this increased price included the sum of 6¾¢ per yard to cover the increase in the cost of goods which plaintiff would be required to pay on and after August 1; that the goods upon which the tax was paid were sold within 30 days after August 1; that the increase in the market price did not add to the cost of the garments included in plaintiff's taxable in-

ventory as of August 1; and that by reason of the increase in the price as of August 1, plaintiff increased its margin of profit by the sum of 6¾¢ per yard and that by doing so, the sales value of the inventory upon which the tax was levied was increased in the sum of $62,000. There is no finding as to the price per yard at which plaintiff's product was sold. As we understand plaintiff's contention, which appears not inconsistent with the court's finding, it took 17¢, the market price as of August 1, deducted the 2¼¢ processing tax included therein (the processing tax was in the same amount as the floor tax), leaving 14¾¢. The difference between 8¢, the actual cost, and 14¾¢ is 6¾¢, which represents plaintiff's margin of profit as found by the court. This does not mean that its actual selling price was 14¾¢ per yard, as there was an increased labor cost. This item, however, is comparatively small and we do not regard it as material to the question presented.

The court also found: "That the increased prices fixed by plaintiff on August 1, 1933, were calculated to and designed to, and did, recover all of plaintiff's costs, including the sum of $14,070.00, the amount of the floor stock taxes paid to the defendant."

We are inclined to agree with the plaintiff that this finding is more in the nature of a conclusion than a finding of fact. At any rate it presents the legal question here involved.

Plaintiff advances numerous theories in support of its position. It is argued that a mathematical computation from the court's findings demonstrates that it bore the burden of the tax. For instance, the court found that it increased its profits 6¾¢ per yard over the cost price of 8¢. In other words, it would appear that its selling price was 14¾¢ per yard. As the market price of August 1 was 17¢ per yard, plaintiff's selling price was 2¼¢ (the amount of the floor tax) less than the market price. Another way of arriving at the same conclusion is to take the cost price of 8¢, plus the 2¼¢ floor tax, which amounts to 10¼¢, the amount of plaintiff's actual investment. Increasing this by 6¾¢ amounts to 17¢, the replacement cost of the goods. This argument, on its face, appears rather plausible, but it ignores the real question in controversy—that is, whether plaintiff's selling price should be compared with its cost price as defendant contends, or whether it should be compared with its replacement cost (less processing tax) as plaintiff contends.

Plaintiff also argues that the tax was not passed on because it was not billed as a separate or identifiable item. In support of this position it relies strongly upon Cudahy Packing Co. v. United States, D. C., 37 F.Supp. 563, 567, 571. This is a recent decision by the District Court of the Northern District of Illinois, now pending on appeal. To comment on this question now might interfere with its proper consideration in the other case, and, furthermore, as we shall show hereinafter, we do not think a decision of this point is necessary to the instant case.

Plaintiff advances two other theories in support of its position—(1) that the margin test constituted prima-facie proof that the tax was not passed on, and (2) that it was entitled to recover the market value (less tax) of its inventory, and that when given credit for such increase there was no room for the inclusion of the tax.

As we view the situation, the validity of these theories is also dependent upon whether plaintiff's actual cost-price or the replacement price is to be used as a base. We shall, therefore, discuss the two theories together. The margin test is predicated upon Section 907(a) and (b) of the Revenue Act of 1936, U.S.C.A., Title 7, § 649(a, b). This section makes no reference to a floor stock tax, but only to a processing tax. Plaintiff argues, however, that it should also be given application to the former. Defendant makes no contention to the contrary, and for the purpose of discussion, we assume it applies. In substance, it provides that where a claim for refund is made "it shall be prima-facie evidence that the burden of such amount was borne by the claimant to the extent * * * that the average margin per unit of the commodity processed was lower during the tax period than the average margin was during the period before and after the tax." Plaintiff demonstrated by proof that such margin for the first seven months of 1933 was 45.37%, and 34.36% for the last five months of the same year, or a decrease of 11.01%. In connection with this proof, it was also shown that the plaintiff, during the year 1933, actually lost $13,000 in its operations. Defendant's sole answer to this so-called margin test is that Section 907(e) (2) provides that this presumption is rebuttable by proof that plaintiff increased the sales price of the article with respect to which

the tax was imposed. Defendant, however, overlooks a further provision in the same section to the effect that the claimant may establish that such increase in price was caused by factors other than the tax.

This brings us to the question as to whether the 6¾¢ per yard increase included in plaintiff's selling price was a factor which refutes the inference which ordinarily follows from an increased selling price. As we understand the findings of the court below, plaintiff's increased selling price, so far as material to the instant question, was due to the increase in the market value of such product at the time the tax became effective. Plaintiff contends that at such time its inventory was worth what it would have sold for on the open market, and that it had a property right measured by such value. Without doubt the same profit could have been realized from its inventory by sale on the open market, in its raw state. It is difficult to perceive how either the processing or floor stock tax had anything to do with, or entered into, the profit which plaintiff was entitled to and which entered into the increased sale of its finished product. So far as the record before us discloses, the market price of the product on August 1, after deducting the processing tax of 2¼¢, was 14¾¢. That was its value or worth to the plaintiff because that was its market price. It actually cost the plaintiff 8¢, which meant an increase in value of 6¾¢. Was not plaintiff entitled to pass that increased value on to the vendee? To say that this increased price included the 2¼¢ floor tax is to say that plaintiff only passed on 4½¢ of the increased value of its product. There was not room to pass on both the increased value and the tax. It is difficult to perceive by any fair or equitable reasoning how a taxpayer could or should be charged with including in the sales price of its product a tax, when such increase can be attributable to the increased value of its product determined upon a competitive market.

It is interesting to speculate what the situation would be had plaintiff's inventory been acquired by gift or inheritance, rather than advance purchase, and sold at a price sufficient to include the tax. Consistency would seem to require a contention by the defendant that plaintiff had recouped the tax from its vendee, because having acquired the goods without cost, the selling price was sufficient to include the tax. Such a theory would, of course, preclude the plaintiff from realizing anything from its inheritance or gift.

■ Defendant relies on certain correspondence between plaintiff and its customers which, it is argued, refutes the claim that the tax was not passed on to plaintiff's vendees. This correspondence, it is true, made reference to the prospective processing tax and indicates that it would be added to the cost of the merchandise. We think the correspondence has little, if any, bearing for the reason that it referred only to the processing tax and the effect it would have on the general market price. Furthermore, plaintiff, as pointed out heretofore, in one instance billed the tax as a separate item, and in a few instances included it in its sales price. This was admitted by the plaintiff and such amounts were deducted from its refund claim. Its general manager testified that the vendees would not stand for the addition of the tax and that it was not included in any other sales. The most unfavorable inference which can be drawn from the correspondence is that plaintiff might have, prior to the effective date of the tax, considered or even intended to include it in its sales price. We are of the view, however, that plaintiff's intention or motive is immaterial. Certainly it is not controlling. The question at issue must be determined on the basis of what was actually done.

The numerous cases cited by the respective parties furnish little help in the decision of the instant problem. Hutzler Bros. Co. v. United States, D. C., 33 F. Supp. 801, comes nearest to being in point. There the Government, as here, contended there was a presumption that the tax had been passed on because of the increased selling price. With reference to such contention, the court, at page 805 of 33 F. Supp., said: "But, of course, the obvious fallacy of such an argument is that it completely ignores the numerous other factors, which, as has been disclosed in this case, were the bases for the increased prices, and which, in and of themselves, more than account for the entire increase, —i. e., the inexorable law of supply and demand, degree of competition, etc."

Defendant relies chiefly upon three cases: Honorbilt Products v. Commissioner, 3 Cir., 119 F.2d 797; Luzier's Inc., v. Nee, 8 Cir., 106 F.2d 130, and C. M. McClung & Co. v. United States, Ct.Cl., 35 F.Supp. 464. In the Honorbilt case the taxpayer concurrently with the imposition of the processing

534

tax, increased the price of its product $2 per item. Of this amount the tax amounted to 67.2¢, or about one-third of the increased selling price. The reason given by the taxpayer for the increase was that a competitor had made a similar increase of a like product. It was held that such reason was not sufficient to show it had not passed on the tax. In doing so, however, the court, on page 798 of 119 F.2d, made this significant statement: " * * * The increase was more than sufficient to take care of the tax and there is nothing in the record to show that the increase in price was due to any increase in the cost of raw materials, of labor or of manufacture generally. * * *"

In the instant case, plaintiff's increased price was due to the increased market price of the taxable product at the time the tax attached.

The Luzier case clearly is not in point. No claim was made that the increased selling price was the result of the increase or replacement cost of the taxpayer's product.

The McClung case was decided by the Court of Claims. There the taxpayer, as to goods purchased on and after August 1, 1933, increased its selling price to include such costs. So far as the opinion discloses, however, the only increase in the cost was the amount of the processing tax, and, of course, when the selling price was raised to include such additional costs, the tax naturally was included and passed on. The taxpayer also, on August 1, had on hand an inventory upon which it paid a floor tax. Some of this inventory was sold at the old price and some was sold at the increased price which applied to the goods purchased subsequent to the effective date of the tax. The taxpayer offered no proof as to how much of the inventory was sold at the old price, and the court held that in the absence of such proof no recovery could be had for even that portion of the inventory. Again no question was raised or decided such as is presented here.

■ Both sides cite and quote from Anniston Manufacturing Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 822, 81 L.Ed. 1143. As we read this case it throws little, if any, light upon the instant situation. It is true the court held the refund statute constitutional and discussed the various paragraphs thereof. It also held that the claimant must show " * * * where it can be shown, that he alone has borne the burden of the invalid tax and has not shifted it to oth-

ers." These matters are not in dispute here. It may be pertinent, however, to note the reason given by the court for requiring such a showing on the part of the claimant. The court, on page 348 of 301 U.S., page 821 of 57 S.Ct., 81 L.Ed. 1143, said: " * * * While the taxpayer was undoubtedly hurt when he paid the tax, if he has obtained relief through the shifting of its burden, he is no longer in a position to claim an actual injury and the refusal of a refund in such a case cannot be regarded as a denial of constitutional right."

■ Applying such pronouncement to the instant situation, we do not see how it can be logically contended that plaintiff has obtained relief through the shifting of its burden merely by increasing its selling price so as to permit recovery of the actual market value of its product. The position of the defendant and the decision of the court below would require the plaintiff to forego the recovery of a sufficient portion of the increased value of its product to make room for the inclusion of the tax. It is our opinion that such a requirement results in an actual injury to the plaintiff, as real as though he were being deprived of his property for less than its fair market value.

In view of what we have said, it follows that the judgment of the District Court should be and is reversed.