## BRICKER BAKING CO. v. ROTHENSIES, Collector of Internal Revenue, et al.

### No. 1330.

District Court, E. D. Pennsylvania.
Sept. 22, 1942.

Charles L. Miller, of Lancaster, Pa., for plaintiff.

Gerald A. Gleeson, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and O. W. Hammonds, Sp. Assts. to Atty. Gen., for defendants.

KALODNER, District Judge.

This action was brought to recover payments of floor stock taxes imposed under the Agricultural Adjustment Act of 1933, 7 U.S.C.A. § 601 et seq. The complaint refers to two payments of such taxes in the respective amounts of $219.42 and $720.55 (including interest and penalties). Plaintiff conceded during the course of the trial of the case that in view of the failure to incorporate the claim for the payment of $219.42 in the Refund Claim filed with the Commissioner, that no recovery could be had with respect to such portion of the tax, and claim for that amount has accordingly been withdrawn, leaving for the court's determination the question of whether the plaintiff is entitled to recover floor tax (including interest and penalty) in the amount of $720.55.

Two principal issues have been raised by the pleadings and proofs:

(1) Did the plaintiff sufficiently comply with the requirements of Section 903 of the Revenue Act of 1936, c. 690, 49 Stat. 1747, Sec. 645, Title 7 U.S.C.A., in filing his claim for refund with the Commissioner?[1]

(2) Did the plaintiff bear the burden of the tax within the meaning of Section 902

---

[1] Sec. 903, "Filing of claims" (Sec. 645, Title 7 U.S.C.A.) reads as follows: "No refund shall be made or allowed of any amount paid by or collected from any person as tax under this chapter unless, after June 22, 1936, and prior to July 1, 1937, a claim for refund has been filed by such person in accordance with regulations prescribed by the Commissioner with the approval of the Secretary. All evidence relied upon in support of such claim shall be clearly set forth under oath. The Commissioner is authorized to prescribe by regulations, with the approval of the Secretary, the number of claims which may be filed by any person with respect to the total amount paid by or collected from such person as tax under this chapter, and such regulations may require that claims for refund of processing taxes with respect to any commodity or group of commodities shall

of the Revenue Act of 1936, Sec. 644, Title 7 U.S.C.A.?[2]

The government's contention with respect to the first issue is that the plaintiff did not submit sufficient evidence in support of his claim for refund to the Commissioner of Internal Revenue, and thus failed to comply with the provisions of Section 903 of the 1936 Act. The government further contends that the plaintiff, after denial of the Refund Claim by the Commissioner, was limited to the same evidence as that submitted to the Commissioner. This issue may be disposed of quickly, since the government in its brief has conceded that the determination of this issue would depend on the outcome of the case of Bethlehem Baking Co. v. United States, 3 Cir., 129 F.2d 490, 493, decided June 26, 1942. At the time of trial, this case was pending before the United States Circuit Court of Appeals for this Circuit. The Circuit Court held that the requirement in Section 903 of the 1936 Act—that the taxpayer who seeks a refund establish that he bore the burden of the tax "to the satisfaction of the Commissioner"— did not invest the Commissioner with absolute authority or discretion in respect to such funds. It further held (page 493, of 129 F.2d): " * * * While it is the duty of a claimant to present a formal claim and to endeavor by sufficient proof to satisfy the Commissioner as to its merit, he should not be barred from presenting further evidence in support of the same claim in a suit for refund after rejection by the Commissioner. See Hutzler Bros. Co. v. United States, D.C.Md., 33 F.Supp. 801, 803. Moreover, as we have already pointed out, the Commissioner made no objection to the absence of an oath but responded with respect to the merit of the evidence submitted. The examination and consideration of the claim on its merits constituted a waiver by the Commissioner of any objection as to the form of the submission. Cudahy Packing Co. v. United States, D.C.N.D.Ill., 37 F. Supp. 563, 570, reversed on other grounds 7 Cir., 126 F.2d 429."

The decision in the Bethlehem Baking Co. case, supra, therefore, disposes of the first issue in favor of the plaintiff.

I come now to the consideration of the issue as to whether or not the plaintiff has proven that it bore the burden of the floor tax, and if so, to what extent. As to this issue, the record presents considerable difficulty, but I have concluded that the plaintiff has proved that it bore the burden of the said floor tax to the extent of 16 per cent of the amount of the tax ($720.55, including interest and penalty), or a net amount of $115.29, to which the plaintiff is now entitled to a refund with interest.

Counsel for the plaintiff contends that the evidence submitted at the trial of this case shows that the plaintiff bore the full burden

cover the entire period during which such person paid such processing taxes. June 22, 1936, 9:00 p. m., c. 690, § 903, 49 Stat. 1747."

[2] Sec. 902, "Conditions on allowance of refunds" (Sec. 644, Title 7 U.S.C.A.) reads as follows:

"No refund shall be made or allowed, in pursuance of court decisions or otherwise, of any amount paid by or collected from any claimant as tax under this chapter, unless the claimant establishes to the satisfaction of the Commissioner in accordance with regulations prescribed by him, with the approval of the Secretary, or to the satisfaction of the trial court, or the Board of Review in cases provided for under section 648 of this title, as the case may be—

"(a) That he bore the burden of such amount and has not been relieved thereof nor reimbursed therefor nor shifted such burden, directly or indirectly, (1) through inclusion of such amount by the claimant, or by any person directly or indirectly under his control, or having control over him, or subject to the same common control, in the price of any article with respect to which a tax was imposed under the provisions of this chapter, or in the price of any article processed from any commodity with respect to which a tax was imposed under this chapter, or in any charge or fee for services or processing; (2) through reduction of the price paid for any such commodity; or (3) in any manner whatsoever; and that no understanding or agreement, written or oral, exists whereby he may be relieved of the burden of such amount, be reimbursed therefor, or may shift the burden thereof; or

"(b) That he has repaid unconditionally such amount to his vendee (1) who bore the burden thereof, (2) who has not been relieved thereof nor reimbursed therefor, nor shifted such burden, directly or indirectly, and (3) who is not entitled to receive any reimbursement therefor from any other source, or to be relieved of such burden in any manner whatsoever. June 22, 1936, 9:00 p. m., c. 690, § 902, 49 Stat. 1747."

of the floor tax. The government, on the other hand, vigorously denies this assertion, and maintains that the evidence submitted proves only that 16 per cent of the floor tax was borne by the plaintiff. I have concluded that the government's position is correct for the following reasons:

There was introduced in evidence (plaintiff's Exhibit 4) a detailed calculation of the plaintiff's costs for the three months' period extending from April 2, 1933 to July 1, 1933 (which was the period immediately preceding the effective date of the floor tax), and a similar calculation for the three months' period extending from July 2 to September 30, 1933. The floor tax applied to stocks of flour on hand as of July 9, 1933. The plaintiff's Exhibit 4 likewise included a statement as to the sales prices of its products for the said two periods. These calculations, which were supplemented by testimony of a certified public accountant who testified for the plaintiff, would appear on the surface to indicate that while the selling price of the commodities manufactured by the plaintiff increased to the extent of $2.16 per barrel on the average during the three months' accounting period subsequent to the imposition of the tax, the plaintiff's costs (excluding the floor tax) increased to the extent of $2.38 per barrel on the average and, therefore, that the rise in cost other than tax, more than offset the increase in the sales price—which, if correct, would indicate that the plaintiff bore the full burden of tax.

The government, however, supported by its witness who reviewed the plaintiff's tax calculation, contends that the plaintiff's calculation is incorrect because there is included in the cost of the material for the period extending from July to September, 1933, processing tax in the amount of $1.38 per barrel. The government contends that this item must be eliminated from the cost, thereby reducing the cost of sales per barrel during the July to September period, and consequently reducing the plaintiff's figure of increase in costs of sales for the second period from $2.38 to $1 per barrel.

Plaintiff concedes that there is included in the amount of $5.18, representing the cost of flour in the July to September period, the sum of $1.38, representing processing tax, and there is likewise included a figure of 7¢ per pound, which represents the first payment of floor tax on the amount of 640 barrels which were on hand as of July 9, 1933. The government raises no issue with respect to the inclusion of the latter item of cost.

No processing tax was paid with respect to the 640 barrels of flour which the plaintiff had on hand on July 9, 1933. This inventory was subject to the floor tax, but not to the processing tax. I am concerned with proof that the floor tax on these 640 barrels of flour was not shifted to the plaintiff's customers in the form of an increase in the price. To demonstrate that there was no such shift, plaintiff in its Exhibit No. 4 presents figures with respect to sales prices, cost of sales and gross margin of profit for the three months' period preceding and succeeding the approximate date when the floor tax was effective. Naturally, if the increase in the sales price per barrel ($2.16) was offset completely by an increase in materials or other cost of production (exclusive of taxes), the plaintiff would have readily shown that it bore the burden of the floor tax.

After eliminating the said item of processing tax from the cost of flour in the July to September period, I conclude that the plaintiff's increased costs per barrel of flour in the July to September period were only $1 as against $2.38, claimed by the plaintiff. Applying the increased cost of sales of $1 against the increase in the sales price of $2.16, I find that plaintiff recovered $1.16 per barrel in the form of an increase in the sales price during the July to September period. Plaintiff bore the burden of and is entitled to recover 22¢ out of each $1.38 paid per barrel in floor tax, or 16 per cent of the total amount of floor tax paid (i. e., 16 per cent of $720.55). Accordingly, plaintiff is entitled to recover the sum of $115.29.

Judgment should be entered for the plaintiff in the amount of $115.29 with interest from the date of payment, March 2, 1934.