## BLUMENTHAL PRINT WORKS v. UNITED STATES.

### Civil Action No. 437.

District Court, E. D. Louisiana, New Orleans Division.

Aug. 3, 1943.

Isaac S. Heller and Ben Goodman, both of New Orleans, La., for plaintiff.

Lester L. Gibson, Sp. Asst. to Atty. Gen., and Henry C. Vosbein, Asst. U.S. Atty., of New Orleans, La., for defendant.

CAILLOUET, District Judge.

The plaintiff, describing itself as a commercial co-partnership converting, importing and dealing in cotton goods continuously since 1930, inclusive, seeks to recover judgment against the United States ordering that plaintiff be refunded the sum of $23,529.39, with interest according to law, which plaintiff, in its alleged status of "real importer" of certain foreign cotton goods, claims to have paid as compensating taxes with respect to importations thereof, which were assessed under the then claimed authority of the Agricultural Adjustment Act, 7 U.S.C.A. §§ 601–659, before the Supreme Court of the United States on January 6, 1936, in the case of United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed 477, 102 A.L.R. 914, decreed that no power existed in Congress to impose such tax exactions.

In attempt to comply with all conditions sine qua non to lawful prosecution of its suit against the United States for refund of the compensating taxes at issue, the plaintiff specifically alleges, substantially in the language of the pertinent provisions of the Agricultural Adjustment Act, 7 U.S.C.A. § 644, that it bore the burden of the claimed amount hereinabove mentioned, that it was not relieved thereof, nor reimbursed therefor, nor did it shift such burden, directly or indirectly.

The total compensating taxes originally claimed to have been paid by plaintiff are represented by it to have amounted to $42,425.20, plus $477.85, as is reflected by the formal claims for refund, which it filed with the Commissioner of Internal Revenue (Exhibits "C" and "E").

Such claims for refund, plaintiff alleges, were disallowed in their entirety by the Commissioner, whose official notices on the subject (as reflected by copies thereof made to form part of plaintiff's complaint) each read in part, as follows, to-wit:

"You are advised that the person importing any article subject to the compensating tax is the taxpayer and is likewise the person who is entitled to receive any refund which may be allowable under Title VII of the Revenue Act of 1936. This conclusion is based on the provisions of Chapter IV of Regulations 81, as amended by T. D. 4501, C. B. Volume KIII-2, 524, which reads, in part, as follows:

" 'Art. 17—*When the tax attaches.*— The compensating tax attaches immediately

upon the importation of the article * * *.

" 'Art. 18—*Liability of the tax.*—The person liable for the tax is the person who imports any article subject to the tax. * * *.'

"From an examination of the claim, in the light of the investigation report and the evidence submitted by you, it appears that (1) you handled the merchandise involved in the claim merely on a consignment basis for the foreign manufacturer, Tissage de Courtrai, Courtrai, Belgium, who was also the importer, and, therefore, (2) you had no title to, or interest in, such merchandise at the date of importation or at any time thereafter. Further, the above-mentioned evidence is insufficient to establish that Tissage de Courtrai bore the burden of the tax, refund of which is claimed.

"Inasmuch as the importer was primarily liable for the tax, the payment thereof by you, made with knowledge that the tax was imposed upon the importer, was made on behalf of the importer (taxpayer). Therefore, you are not the importer, within the meaning of Article 2 (1) of Regulations 81, or the taxpayer, even though the compensating tax may have been paid (pursuant to agreement or otherwise) by you, and since you were not the taxpayer, the Commissioner is without authority under Title VII of the Revenue Act of 1936 to allow your claim."

Plaintiff alleges that it protested such official action and sought reconsideration thereof, as fully evidenced by the reproduction of its written protest appearing in the complaint (Art. XVII), but that it was subsequently officially declared: (1) That plaintiff's submitted evidence neither established title to the "Spring Air" and "Dobby" goods in plaintiff on the dates of importation, nor plaintiff as the party actually liable for the $4,178.60 of compensating taxes paid, nor that it had borne the burden of said amount; and (2) that all other merchandise in issue was shipped by Tissage de Courtrai on consignment to plaintiff, under the terms of that certain written agreement between the parties, dated December 19, 1933 (made part of the complaint as Exhibit B), and that, consequently, plaintiff being neither importer of the merchandise nor the taxpayer, was not entitled to a reopening of the matter for consideration of its recast claim for refund, calling for $4,178.60 for itself and

$38,269.49, one-half of which latter sum plaintiff proposed to divide and share half-and-half with Tissage de Courtrai.

Plaintiff's contention here as to $4,155.71 of the aforementioned sum of $42,425.20, is still that it paid said amount of compensating taxes entirely and exclusively for its own account, with respect to its importations of certain goods known as "Spring Air" and "Dobby", $2,980.24 thereof (as developed at the trial), on plaintiff's importation of the former brand from Tissage de Courtrai aforementioned, and the greater part of the remaining $1,198.36 thereof, on plaintiff's importations of the latter brand chiefly from another mill, known as de Poorteere Brothers. (Tr. pp. 16, 17; 64-66.)

The balance of $38,269.49 remaining of the original $42,425.20, and the $477.85, plaintiff here represents to have been compensating taxes paid by it—one-half thereof, or $19,373.67, for its own account, and the other half or a like amount, for account of said Tissage de Courtrai; and plaintiff further represents that such compensating taxes so paid, "half-and-half", were all assessed with respect to importations by Blumenthal Print Works from Tissage de Courtrai through the Port of New Orleans, except the stated sum $477.85, which relates to importations made through the Port of New York.

The plaintiff has established by the preponderance of the evidence that all compensating taxes here in question, except $4,155.71 *actually* paid by plaintiff with respect to the "Spring Air" and "Dobby" goods, relate to importations of merchandise by Blumenthal Print Works from Tissage de Courtrai, principally under the terms of the aforementioned written agreement between the parties, dated December 19, 1933 (Exhibit B).

It is contended by the Government that, under the pertinent Treasury Regulations, "to import" means "to bring in a taxable article within the limits of a port of entry * * * with the intention of unlading such article"; that compensating taxes attached immediately upon importation of merchandise subject thereto, and, upon withdrawal of taxable merchandise from a bonded warehouse, the importer was required to deposit with the Collector of Customs an amount equal to the estimated compensating tax, which amount was to be applied in satisfaction of the

importer's liability for such actual tax as might be determined to be due; with adjustments made for deficiency or excess of deposit. (Treas. Reg. 81, 1933 ed., Arts. 2, 17, 18, 19).

But "all merchandise imported into the United States shall be held to be the property of the person to whom the same is consigned"; and it is such consignee who must "make entry therefor either in person or by an agent", and who must deposit with the Collector of Customs, at the time of so making entry, the amount of duty estimated to be due with respect to the importation, unless it be that the merchandise is entered for warehouse, as were all of the importations from Tissage de Courtrai made by plaintiff through the Port of New Orleans. 19 U.S.C.A. §§ 1483, 1484(a), 1505, 1557.

The aforementioned written agreement between the parties (Exhibit B), under which the bulk of said mentioned importations took place, was clearly intended to govern the relations of the parties respecting their future business dealings (which had commenced during the year 1931) and contemplated Tissage de Courtrai's unaltered status as seller to plaintiff, which, up to that time, had been purchasing from said Belgian mill. It is true that the goods *intended to be purchased* by Blumenthal Print Works were to be shipped by Tissage de Courtrai for warehousing at the port of entry, pending their being reduced to the plaintiff's dominion and control, as purchaser, upon Blumenthal Print Works carrying out its definitely assumed obligation to effect the release of the merchandise from the bonded warehouse, in due course, by providing for the necessary lifting of the withholding bar of customs duties and the liquidation of the compensating taxes, at plaintiff's own "present" cost and charge. And it is equally true that such warehoused goods, as between the parties contractant, were not to be rated those of plaintiff (which might, however, carry insurance on them), and that their contemplated purchase was not to be considered consummated, until and unless release from the bonded warehouse was actually effected; but Blumenthal Print Works expressly bound and obligated itself to Tissage de Courtrai to effect such warehouse release by plaintiff's own effort and money disbursement and to thereupon purchase the so-released mer-

chandise, upon the terms and conditions fixed by the contract, which were:

(1) The seller, or Tissage de Courtrai, was to bill the buyer (with the shipping documents) for the price of the merchandise f.o.b. Antwerp, in dollars, and *in payment* of such merchandise, plaintiff was to accept and forward to Tissage de Courtrai negotiable drafts, payable not more than four (4) months after date.

(2) If the merchandise (which was then *purchased* and was thereafter under the exclusive dominion and control of Blumenthal Print Works, as sole and absolute owner, for it to dispose at will to whomsoever and at what price it chose) was thereupon sold in trade by plaintiff and there resulted, as to any one lot out of any one shipment, a profit over and above a certain fixed amount made up as follows:

(1) of a primary charge and deduction of 5½% of and from the proceeds of said lot, as discount, commission and profit secured to Blumenthal Print Works with respect to the particular transaction; and,

(2) of the aggregate sum of all shipping and entry costs relating to the lot so sold, such as freight, drayage, duty and taxes, including compensating taxes,

*then*, but *only* then, of and from such *surplus profit* realized and actually *received* by Blumenthal Print Works from the disposal of *its own* particular lot of merchandise at issue, plaintiff was to allow Tissage de Courtrai the one-half part. Such allowance was to be thus granted by plaintiff to its *seller*, mainly in consideration of the time delay of four months accorded the purchaser, in the first instance, by Tissage de Courtrai, wherein to pay its f.o.b. Antwerp sales price. This in no wise represented *additional payment* for the particular merchandise lot theretofore *purchased*, nor was it a remitting by a consignee and agent to a consignor and principal for the net sales proceeds of goods entrusted on consignment for disposition by consignee, for account of owner and consignor.

■ Entry for warehousing of such merchandise as was the subject of the agreement of December 19, 1933, is permitted by Federal statute, 19 U.S.C.A., §§ 1555–1557; the imported goods may be withdrawn from the bonded warehouse wherein placed, at any time within three

years "upon payment of the duties and charges accruing thereon at the rate of duty imposed by law upon such merchandise at the date of withdrawal". Also, importation may be made in pursuance of an *agreement to purchase*, which must be declared by the consignee. 19 U.S.C.A. § 1485.

The witness Austin, in the employ of a firm of customs brokers which attended to all importations of Blumenthal Print Works, testified that he was familiar with the plaintiff's importations from Tissage de Courtrai; that the imported merchandise was placed in a bonded warehouse, with neither duty nor compensating taxes deposited; that he prepared, in the name of his employer for account of Blumenthal Print Works, necessary papers for the withdrawal of the merchandise from warehouse; and that the duties were paid by Blumenthal Print Works to release said warehoused goods and the compensating taxes were thereupon paid by said plaintiff. (Transcript, pp. 27-32.)

Sidney E. Blumenthal, senior partner and at one time "virtually sole owner of the business" of Blumenthal Print Works (as he described himself), testified that all merchandise from Tissage de Courtrai entered for warehousing through the port of New Orleans under the aforementioned agreement, was carried in warehouse as the property of Blumenthal Print Works and was actually purchased by it; that all Tissage de Courtrai merchandise purchased, was imported under said agreement, except the "Spring Air" and "Dobby" goods. (Tr., pp. 33, 36, 38); and that, to the best of his knowledge, all goods that came to Blumenthal Print Works from across the ocean, even after entering into the agreement of December 19, 1933, were consigned to plaintiff, (Tr. p. 53).

His testimony, as to who was the consignee of the Tissage de Courtrai merchandise, stands uncontroverted; nor does the Government seem to question this.

Neither by the bare terms of the agreement of December 19, 1933, nor by the parties' transaction of business thereunder, or previously thereto, was the handling of the merchandise involved done "merely on a consignment basis", as the Commissioner found. See 46 Am.Jur. (1943) "Sales", §§ 16, 17, 18, pp. 209, 211, 214.

■■ The record, as made up, justifies our holding Blumenthal Print Works to have been both importer and taxpayer and, as such, entitled to seek refund of the compensating tax paid by it, for, as was held in Meredith and Ellicott v. United States, 1839, 13 Pet. 486, 10 L.Ed. 258, the importer of merchandise does, in virtue of the importation, become personally liable to the United States for the duties thereon, and the remedy of the United States is not exclusively confined to the lien on the goods, and the security of such bond as may be given for the duties; the consignee of the merchandise imported is, for this purpose, treated as the owner and the importer.

■ But plaintiff must be held to strict compliance with the conditions imposed by Section 902 of the Act of June 22, 1936, c. 690, 49 Stat. 1747, 7 U.S.C.A. § 644, upon one who seeks a refund. There may be no judgment ordering the United States to refund (as property actually belonging to plaintiff) whatever money was paid by Blumenthal Print Works as compensating tax on the imported goods hereinabove referred to, *unless* plaintiff has established "to the satisfaction of the trial court" that Blumenthal Print Works "bore the burden of such amount and has not been relieved thereof nor reimbursed therefor nor shifted such burden, directly or indirectly" in any one or more of the sundry ways suggested by said Section 902, 7 U.S.C.A. § 644, or "in any manner whatsoever", as said section further reads.

The witness Blumenthal testified that he knew not whether the compensating taxes paid by the plaintiff were passed on to its customers; that in making up sales prices to customers, all costs are taken into account such as the basic European cost, freight, duty, compensating tax, plus discount; that sales are made in a competitive market, and that the sales prices normally figured "at what we believe to be a correct and proper mark-up, all costs included" are placed in the salesman's hands, and such prices are "first put out at a convention that is held in Chicago,—a competing convention where all lines are shown and prices are adjusted to meet competition. * * *" (Tr. pp. 43, 44.)

Blumenthal distinctly remembered writing, and identified, a letter of Blumenthal Print Works of August 18, 1933, ad-

dressed to the Collector of Internal Revenue at New Orleans, requesting an extension of ninety days within which to pay floor taxes assessed against the company, suggesting that within such delay plaintiff would be able to collect, to a great extent, the amount of the floor tax that "we are passing on to our customers when shipping merchandise from our stock" but, to the best of his knowledge (said the witness), the letter related to no taxes involved in the present suit for refund, although he knew not to what particular tax assessment it referred. (Tr. pp. 48, 49.)

He also admitted the genuineness of, and identified, another letter of Blumenthal Print Works, signed by its manager and dated July 5, 1938 (Tr. pp. 49, 50), wherein appeared the following statement, viz.: "We have made no claim for refund of compensating tax with respect to merchandise where the customs entry governing were liquidated with no increase in duty."

■ Blumenthal Print Works, as consignee of the various and sundry importations of Tissage de Courtrai merchandise entered for warehousing at New Orleans, could withdraw such goods from warehouse, as needed, but within three years from importation, "upon payment of the duties and charges accruing thereon at the rate of duty imposed by law upon such merchandise at the date of withdrawal"; and the same it did so withdraw, paying customs duties predicated upon its own declarations of value and well-knowing that it was the duty of the Collector of Customs to cause the entered merchandise to be appraised, and if the final appraised value were found to be in excess of the "entered value", then Blumenthal Print Works, as the consignee of the entered merchandise, would be held to pay appropriate additional duties. 19 U.S.C.A. §§ 1484, 1485, 1487, 1489.

After June 1, 1936, following the declared unconstitutionality of the compensating taxes hereinabove referred to, on January 9, 1936, plaintiff was required to pay additional customs duties to the amount of $49,600, relating to its importations from Tissage de Courtrai and withdrawals from warehouse, all of which had occurred prior to said January 9, 1936. (Tr. pp. 46, 82.)

Bernard E. Welsh, Field Deputy Collector of the United States Internal Revenue Service, testified that he had examined plaintiff's records and had recommended allowance of its claim, but only up to approximately $35,000, he considering the additional $49,600 customs duties paid as entering into the cost of plaintiff's merchandise, involved in his attempted computation of the average margin for the tax period and the average margin for the period before and after the tax, *7* U.S.C.A. § 649; *otherwise,* said he, there would have been no such recommendation, because, although there was apparently a lower average margin during the tax period, Mr. Blumenthal "practically admitted that he maintained his regular prices" and witness was forced to the conclusion that there were "hidden features" which he had been unable to uncover. He further testified that he firmly believed that if no such additional customs duty had been imposed, no claim for refund of compensating taxes would have been filed; that this belief was based upon information and knowledge that came to him, during the course of his official investigation of plaintiff's books, from repeated conversations with Mr. Blumenthal. He did not recommend allowance of the $477.-85 compensating tax refund claim, relating to the aforementioned port of New York importations, and Mr. Blumenthal was willing to waive and abandon said claim. (Tr. pp. 69, 76, 82, 104, 108, 110, 112.)

Previously, Blumenthal had testified: "I believe we obtained a fair market price for all of our goods at all times." (Tr. p. 39.)

Welsh was asked to explain what he meant by the following excerpt read to him from his official letter to his superior, the Chief of the Field Division, dated January 10, 1939, and referring to Mr. Blumenthal, viz.: "In discussing the claim (the one for $477.85), he adopts a more reasonable attitude, *admitting the tax was properly passed on,* but as holds with respect to the New Orleans claim, he did not recover an added cost in the shape of additional duty paid on these shipments, starting in 1936, after the tax had been declared unconstitutional." (Explanatory matter and emphasizing, now supplied), he did so. (Tr. pp. 81, 82.)

Blumenthal was present in Court hearing him testify, but the trial ended, at the conclusion of his testimony, without attempted rebuttal by Blumenthal or anyone else.

To recover the claimed refund for the compensating tax paid, as aforesaid, the

plaintiff must establish to the satisfaction of the Court *in addition* to, the fact that Blumenthal Print Works did initially bear the burden of said tax when payment thereof was made, that plaintiff "has not been relieved thereof nor reimbursed therefor nor shifted such burden, directly or indirectly", (1) through inclusion of the tax paid, in its sales price; (2) through reduction in the purchase price paid for the imported goods; (3) *"in any manner whatsoever"* (emphasis supplied); and that "no understanding or agreement, written or oral, exists whereby" Blumenthal Print Works "may be relieved of the burden of such amount, be reimbursed therefor, or may shift the burden thereof". Sec. 902, Title VII, Revenue Act of 1936, 7 U.S.C.A. § 644; Anniston Mfg. Co. v. Davis, 1937, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143.

No matter how onerous it may be to carry the burden of proof so imposed by the statutory grant of the privilege of recovery against the Government, plaintiff can secure the claimed refund only under the conditions and limitations prescribed by Congress. It must take the privilege as it is offered, for the United States as sovereign is, of course, immune from suit except as it consents to be sued, and the terms of its consent with respect to the present suit for refund defines this Court's jurisdiction to grant relief; no power vests in it to order a refund to Blumenthal Print Works unless plaintiff "establishes to the satisfaction * * * of the trial court" nothing less than what Congress has said a claimant must so demonstrate as condition sine qua non to the recovery of a refund allowance. Unit the recovery of a refund allowance. United States v. Sherwood, 1941, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058.

The statutory enactment relating to such tax refunds, 7 U.S.C.A. § 649, prescribes that it shall be prima facie evidence that the burden of the amount of the compensating tax was borne by the claimant to the extent (not exceeding the amount of the tax) that "the average margin per unit * * * was lower during the tax period than the average margin was during the period before and after the tax"; but it is added that such "presumption" as is so established by § 649(a), may be rebutted "by proof of the actual extent to which the claimant shifted to others the burden" of the tax. § 649(e).

It is provided that said mentioned average margins shall be determined as follows, viz.:

For the tax period (which shall mean "the period with respect to which the claimant actually paid" the tax and "shall end on the date with respect to which the last payment was made") the average margin shall be "the average of the *margins* for *all months* (or portions of months) within the tax period". (Emphasis supplied.)

For the "period before and after the tax" (which shall mean "the twenty-four months * * * immediately preceding the effective date of the processing tax, and the six months, February to July, 1936, inclusive.") the average margin shall be *"the average* of *the margins* for *all months* (or portions of months) *within the period before and after the tax."* (Emphasis supplied.)

The statute then proceeds to indicate just how "the margin for each such month" and the one "for each period" shall be computed. 7 U.S.C.A. § 649(b) (2) (3).

Until and unless such margins are so computed, it necessarily follows that the state of "prima-facie evidence" or "presumption", provided for *as an aid* to the claimant in strictly complying with the conditions precedent to the making out of a case for refund, never comes into existence.

Blumenthal Print Works began importations from Tissage de Courtrai in 1931, as outright purchaser, and continued to so trade for about a year and a half, when, in the summer of 1932, a change in business operations of the parties took place, which was thereafter supplanted by the course of dealing called for by the agreement of December 19, 1933; their business dealings having run uninterruptedly from their origination in 1931 until at least January 2, 1936, upon which date appears to have been made the last payment of compensating tax not at issue in plaintiff's claim for refund.

Neither by the testimony of the witness Breitling, a certified public accountant, who was called to the stand by the plaintiff in an attempt to prove just what was the average margin resulting from its business operations during the "tax period", by contrast with the average margin for the "period before and after", nor by the testimony adduced from the witness Welsh, was there made out a case of prima facie evidence that the bur-

den of the tax amount was at all times borne by the claimant.

The "tax period" about which Breitling was questioned was represented as having run from August 3, 1933, to January 6, 1936, and the period *before* said tax period was made to run back only to January 1, 1933, and *not* twenty-four months, although plaintiff was uninterruptedly engaged in the same business, and, as a matter of fact, continuously dealt therein with Tissage de Courtrai during more than twenty-four months next immediately preceding August 3, 1933; nor was it made to appear just how his reported calculations of average margins were *otherwise* effected, except that he did state that, in preparing his figures for the testimony that he was expected to give, he considered *only* the goods imported through the port of New Orleans, and did not consider the first sixteen lots so imported because there was no additional duty paid with respect to the same and, particularly, because "the figures that we were to get up in support of the claim covered only the lots we worked up the figures on". He further testified that the compensating tax, as well as other costs, such as ocean freight and drayage, were included in the items going to make up the cost of the merchandise sold by Blumenthal Print Works and in his computations of profits, and that the additional duty of $49,600.00 was taken into consideration (with respect to the merchandise other than the first sixteen lots) in order to determine the profit that finally accrued to the plaintiff; that the sales prices of Blumenthal Print Works varied considerably, "but we did not go into details as to the costs of the goods that were passed on to the customers"; that the compensating tax varied a good deal, depending upon the weight of the merchandise, and that, while he "did not go into the details on that", he "thinks" that it would average about two cents a yard. (Tr. pp. 55-64.)

The Court is referred to the case of Hutzler Bros. Co. v. United States, D.C.D. Maryland 1940, 33 F.Supp. 801, in support of plaintiff's claim for refund; the "principle" of the case, we are told, has been followed in H. T. Poindexter & Sons Merchandise Co. v. United States D.C.W.D. Missouri, W.D., 1941, 40 F.Supp. 787, and in Epstein v. Helvering, 4 Cir., 1941, 120 F.2d 427.

In *this* case, Blumenthal Print Works specifically alleges that all amounts for which refund is sought "were not passed on" by plaintiff to anyone whomsoever, but that it has "at all times borne the burden of the taxes paid * * * and has not been relieved thereof nor reimbursed therefor nor shifted such burden in any manner whatsoever." (Complaint, #XXII.)

It is interesting to read, in apposition thereto, what Judge Coleman observes with respect to the plaintiff's allegations in the Hutzler case, viz.:

"If the taxpayer in the present case had simply denied, categorically, in the language of the act, that he had passed the burden on, or that he had been relieved of it, or that he had been reimbursed for it *the situation would, of course, be clearly different;* but where, as the court finds in the present case, there has been an honest effort to explain the position of the taxpayer, and where the oral statements under oath, as well as the written accounting testimony of the taxpayer, *contradict any real relationship between the tax and the price increases,* that is, indicate that the floor stocks tax *was never, in any sense, a factor in determining the sales prices of the various articles,* the burden of the statute has been adequately met." Page 803 of 33 F.Supp. (Emphasizing supplied).

Further, the opinion makes very clear just why judgment for the plaintiff followed, viz.:

"Every case of this kind must stand upon its own facts. The Government takes the position that intent plays no part in the matter of relief under the statute; that, if the mere fact can be shown that prices have been raised any time subsequent to the imposition of the tax, then there is a presumption that the price increase was adopted to offset,—no matter how much or how little,—the tax, because the tax was one of the items of increased costs, and increased prices normally reflect increased costs, and that therefore the presumption becomes conclusive unless met by figures in the case of every individual sale which completely exclude the possibility of any such presumption.

"But, of course, the obvious fallacy of such an argument is that it completely ignores the *numerous other factors,* which, as has been disclosed in this case, *were the bases for the increased prices,* and which, *in and of themselves, more than account for the entire increase,*—i.e., the inexorable law of supply and demand,

degree of competition, etc." Page 804 of 33 F.Supp. (Emphasis supplied).

This must be read in the light of a certain specific declaration, appearing in the sworn statement of the Vice-President and Treasurer of the plaintiff Hutzler Bros. Company which the Judge embodied verbatim in his opinion because, he said, it had "all the indicia of a perfectly honest, frank statement", and was accepted by him as "disclosing all details possible of disclosure that are pertinent to the issue, because it is not contradicted successfully in this case." That specific declaration was nothing less than this: "In no instance were any changes made by us in the selling prices charged by us for any of our goods on account of the floor stocks tax" etc. Hutzler Bros. Co. vs. United States, supra.

In the Poindexter case, the Court first observed that the plaintiff had advertised to its customers that it would not shift the burden of the tax to them and had directed its several departments to avoid imposing any part of the tax upon purchasers; and that the factors urged by plaintiff, as reason for its price increases, *included no part of the tax burden*, which plaintiff had so indicated its purpose to absorb.

The Court then held that the plaintiff had established by affidavit, *the truth of which was admitted by the defendant,* that its increased prices "were due to a change from a subnormal price to a normal price and to meet the increased cost of doing business brought on by complex legislation and because of the general increase in the market price of cotton content merchandise and because of bad debts." [40 F.Supp. 790.] Judgment for the plaintiff thereupon followed.

In the Epstein case, the Commissioner's rejection of the plaintiff's claim for refund of process tax had been reviewed by the United States Processing Tax Board of Review. Although the Board had found and held that the petitioner had not increased the cost of the processed articles by inclusion of the tax or any part thereof, nor *separately* collected it from his customers, nevertheless, in the face of the fact that the statutory prima facie presumption resulting from a comparison of margins had proved unfavorable to plain-

tiff, it had proceeded to adjudge that the greater part of the burden of the tax was shifted. In passing, it is interesting to note the Court of Appeals expressing the conviction that the tax burden could not have been shifted unless by inclusion in the selling price or by collection from customers in some other manner.

Holding that the Board's decision did not conform to the interpretation of Section 907(e), Title VII of the Revenue Act of 1936, 7 U.S.C.A. § 649(e), found in the United States Supreme Court's decision in Anniston Mfg. Company v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143 (already referred to hereinabove), such decision was reversed and the case was remanded with direction to the Board to enter judgment for the claimed refund.

None of said three cases in question has application here.

### Findings of Fact.

1. All imported merchandise, with respect to which Blumenthal Print Works paid the compensating tax, refund of which it seeks herein, was consigned to said plaintiff.

2. Plaintiff, while it has established to the satisfaction of this Court that it did initially bear the burden of the amount of compensating tax paid, at the time of payment, *has not so established* that it did continue to bear such burden at all times and has not been relieved thereof nor reimbursed therefor nor shifted such burden, directly or indirectly, in any manner whatsoever.

### Conclusions of Law.

1. As consignee of the imported merchandise, Blumenthal Print Works, in legal intendment, was the "owner" and "importer" thereof, and was liable to the United States, personally for all import duties thereon.

2. Said Blumenthal Print Works was the proper party to pay the compensating tax at issue, and to file and prosecute this suit for the refund of the aggregate amount of compensating tax herein claimed.

3. Plaintiff has failed to make out its case for the claimed refund and its suit must be dismissed, at its costs.

Accordingly, let such a judgment be forthwith entered.